**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

ADAN PINEDA-DOVAL,
  *Defendant-Appellant.*

No. 08-10240

D.C. No.
2:06-cr-00778-
SMM-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted
November 2, 2009—San Francisco, California

Filed August 10, 2010

Before: Betty B. Fletcher, William C. Canby, Jr., and
Susan P. Graber, Circuit Judges.

Opinion by Judge B. Fletcher

11303

**COUNSEL**

Jon M. Sands, Federal Public Defender, and Daniel L. Kaplan, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellant.

Diane J. Humetewa, United States Attorney, District of Arizona; John R. Lopez IV, Deputy Appellate Chief; Joseph Koehler, Raymond K. Woo, Dominic Lanza, Assistant United States Attorneys, Phoenix, Arizona, for the plaintiff-appellee.

---

**OPINION**

B. FLETCHER, Circuit Judge:

Adan Pineda-Doval was convicted, after a seven-day jury trial, on ten counts of transportation of illegal aliens resulting in death, 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(iv). The district court sentenced him to a term of life imprisonment on each count, sentences to be served concurrently. On appeal, Pineda-Doval challenges his convictions, primarily on the basis that the jury should have been instructed that it could find the defendant guilty only if his conduct was the proximate cause of the ten charged deaths. In addition, he argues that his conviction should be vacated because of improper jury instructions regarding the lesser included offense of transportation of illegal aliens, incorrect evidentiary rulings, and prosecutorial misconduct at closing arguments. Finally, Pineda-Doval challenges his sentence; he argues that the district court did not find that he acted with malice aforethought and therefore should not have calculated his recommended Guidelines sentence using the second-degree murder guideline, and also that the district court should have applied the heightened "clear and convincing" standard of proof at sentencing. We affirm Pineda-Doval's conviction, vacate his sentence, and remand for re-sentencing.

## I.

Early in the morning on August 7, 2008, Pineda-Doval loaded twenty men, women, and children into a Chevrolet Suburban. The car was not equipped with rear seats or safety belts. All of his passengers were illegal aliens. Eighteen of them crowded into the back of the Suburban, and two pregnant women sat in the front seat next to Pineda-Doval, the driver.

Customs and Border Patrol ("CBP") Agent Corey Lindsay was driving south on Red Cloud Mine Road, a remote dirt road in southern Arizona that is believed by Border Patrol to be popular with alien smugglers. He passed Pineda-Doval, who was driving in the opposite direction, and saw that the Suburban was crowded with passengers. Agent Lindsay radioed for assistance and turned his car around to follow Pineda-Doval. The defendant quickly realized that he was being pursued, made a U-turn, and started driving towards Mexico. Agent Lindsay did the same. Though Pineda-Doval was forced to drive slowly because of the state of the road and weight of his car, he tried to lose Agent Lindsay several times by hitting the brakes or attempting to pull into the brush. Some passengers grew frightened and yelled at the defendant to stop. He refused.

Pineda-Doval then turned left onto the paved, two-lane Martinez Lake Road. Heading east, he accelerated to about 50-55 miles per hour, occasionally reaching speeds of about 70 miles per hour. Agent Lindsay continued to trail him.

Meanwhile, Agent Clinton Russell responded to Agent Lindsay's request for assistance and drove west on Martinez Lake Road, heading in the direction of the defendant and Agent Lindsay. He carried with him a controlled tire deflation device ("CTDD"), also called a "spike strip." A CTDD is a tool used by Border Patrol to stop fleeing vehicles. It consists of a series of x-shaped plastic links that, when expanded, can

cover one lane of traffic. Hollow tubes are embedded along the plastic strip. When a vehicle drives over an expanded CTDD, the hollow tubes pierce the tires, causing air to gradually escape, disabling the vehicle.

Agent Russell had never used a CTDD before. Between them, Agents Russell and Lindsay had witnessed over 100 CTDD deployments, many of them involving SUVs that were overloaded with passengers. Neither of them had ever seen a spiked vehicle roll over. Pineda-Doval had twice before been the target of a spike strip. On both occasions he had been transporting illegal aliens. The first time he managed to swerve around the CTDD, but the next time he was successfully stopped and apprehended by Border Patrol.

Agent Russell stopped at a point on Martinez Lake Road where the road was relatively flat and there was little traffic. He placed the collapsed CTDD on one side of the road and hid in the brush on the opposite side of the road, ready to pull the CTDD across the pavement when Pineda-Doval approached. Agent Russell radioed Agent Lindsay and advised him of the location of the spike strip. About one and a half miles from Agent Russell's location, when Pineda-Doval was traveling about 45 miles per hour, Agent Lindsay turned on his vehicle's lights and siren. When Pineda-Doval did not yield, Agent Lindsay told Agent Russell to deploy the spike strip.

Agent Russell waited until the Suburban was approximately 80 to 100 feet away and then yanked the spike strip across the road. Pineda-Doval shouted to his passengers, "Commend yourselves to God, because we are being pursued." He swerved across the westbound lane of traffic and onto the dirt shoulder, trying to drive around the CTDD, but it caught his right rear tire. He immediately swerved back onto the paved road. The weight of his unsecured passengers suddenly shifted, and the front edge of the Suburban "tripped" into the asphalt. Passengers were thrown from the Suburban

as it rolled once on its side and then once more end-to-end, finally coming to rest right side up but facing the wrong direction. Five passengers died at the scene, and five more died at hospitals as a result of injuries sustained in the crash.

Pineda-Doval was charged with ten counts of transportation of illegal aliens resulting in death, 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(iv), one count of transportation of illegal aliens placing in jeopardy the life of any person, 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(iii), and one count of reentry after deportation, 8 U.S.C. § 1326(a).

Before trial, the government submitted a motion *in limine* to bar Pineda-Doval from offering evidence that the Border Patrol agents had not complied with CBP policies for deploying spike strips. Over the defendant's objection, the district court granted the motion, concluding that such evidence was irrelevant.

The trial lasted seven days. The Government called the agents involved in the pursuit of Pineda-Doval, the immigration officer who interviewed Pineda-Doval after the crash, two of the Suburban's passengers, and an expert in car accident reconstruction. At the end of the Government's case, Pineda-Doval's counsel renewed his request to submit evidence of CBP policies on CTDDs. The court again refused. Defense counsel rested, explaining that he had no evidence because of the court's ruling. The jury deliberated for about an hour and a half before finding the defendant guilty on all counts. The district court sentenced Pineda-Doval to life imprisonment on each of the ten counts of transportation of illegal aliens resulting in death, sentences to run concurrently.

Pineda-Doval now appeals his conviction and sentence.

## II.

Pineda-Doval argues that his conviction must be vacated because the jury instructions did not require the jury to find

that his transportation was the proximate cause of the deaths of his ten passengers. "A proximate cause is one which played a substantial part in bringing about the death, so that the death was the direct result or a reasonably probable consequence of the defendant's speed or condition or manner of driving." *United States v. Main*, 113 F.3d 1046, 1050 (9th Cir. 1997).

**[1]** The defendant was charged and convicted of violating 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(iv), which has five elements: The defendant must have (1) known or been in reckless disregard of the fact that the person he was transporting was (2) an alien who was (3) in the United States illegally; (4) the defendant must have transported the alien in order to help him or her enter or remain in the United States illegally; and (5) the defendant's transportation must have resulted in the death of some person. With respect to the final element, the district court instructed the jury as follows:

> As used in these instructions and the form of the verdict, "resulted in death" means that the death of a person occurred in the course of the transportation of an illegal alien and was related to the transportation of an illegal alien. You must find that during the course of the transportation *the defendant exposed* individuals to one or more life-threatening conditions and the life-threatening condition(s) was *a cause* in the deaths of those named in the enumerated counts of the indictment.

(Emphasis added.)[1]

---

[1]Pineda-Doval contends that the words "You must find" in the quoted passage amounted to a directed verdict of guilty. This argument is meritless. In light of the instructions as a whole, *Johnson v. Texas*, 509 U.S. 350, 368 (1993), the jurors clearly would have understood this instruction to be a statement of the facts that they "must find" in order to return a guilty verdict.

Pineda-Doval argues that this definition of "resulting in death" misstated the law because the instructions should have required the Government to prove that "the defendant exposed" his passengers to life-threatening conditions *and* that his transportation was the proximate cause of the ten deaths.

### a. Standard of Review

As a threshold matter, we consider whether this argument was properly preserved. Generally, "[w]e review de novo whether the jury instructions accurately define the elements of a statutory offense." *United States v. Hicks*, 217 F.3d 1038, 1045 (9th Cir. 2000) (citing *United States v. Gergen*, 172 F.3d 719, 724 (9th Cir. 1999); *United States v. Iverson*, 162 F.3d 1015, 1022 (9th Cir. 1998)). However, when the defendant makes no objection to the jury instructions at the time of trial, review is only for plain error. *See Jones v. United States*, 527 U.S. 373, 388 (1999). A party must state the specific grounds for his or her objection. Fed. R. Crim. P. 30(d); *Jones*, 527 U.S. at 387. Making a non-specific objection and then offering an alternative instruction is sufficient only if it is clear from the record that the district court was aware of the reasons for the defendant's objection. *See Gulliford v. Pierce County*, 136 F.3d 1345, 1349 & n.5 (9th Cir. 1998).[2]

Defense counsel did object to the "resulting in death" instructions, but he did not specifically state on the record that the instructions were inadequate because they did not require the jury to find proximate cause. Counsel instead argued that the instructions on causation were incorrect because they

---

[2]Arguably, an objection might not be required in this case. *See United States v. Houston*, 406 F.3d 1121, 1123 n.3 (9th Cir. 2005) (considering whether 21 U.S.C. § 841(b)(1)(C) contains a proximate cause requirement, "[a]lthough the Government did not object to the district court's jury instruction below, . . . because we believe that answering this purely legal question is necessary to fairly resolve this appeal" (citing *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978))).

made the defendant liable if he merely "allowed [his passengers] to be around some sort of conditions that were life threatening," and that the instructions should be "more strong" and include an "element of culpability." Rather than the "defendant exposed" language, he proposed the following instruction: "You must find that during the course of the transportation . . . *the defendant created* one or more life-threatening conditions and the death *was caused* by these conditions" (emphasis added). The Government disagreed, arguing that the "defendant created" instruction was incorrect because it did not cover the situation where ten passengers died even though the defendant had not overloaded the Suburban, the passengers were safely seated and belted, and the defendant had driven slowly and obeyed all traffic laws. In other words, the "defendant exposed" language was correct because it required the jury to find Pineda-Doval guilty under § 1324(a)(1)(B)(iv) if his conduct was the but-for cause of the charged deaths, no matter how unlikely those deaths were. The district court agreed with the Government and overruled Pineda-Doval's objection.

While defense counsel's objection could have been clearer, it was sufficient to preserve the issue of whether § 1324(a)(1)(B)(iv) contains a proximate cause requirement. Defense counsel did not use the words "proximate cause" before the district court, but he did clearly argue that the statute requires a closer causal connection than that contemplated by the Government's "defendant exposed" language. The district court understood that the Government's language required only but-for causation, and that the defendant's position was that the statute required more. Because Pineda-Doval's objection was specific enough to "bring into focus the precise nature of the alleged error," *Palmer v. Hoffman*, 318 U.S. 109, 119 (1943), review is de novo.

### b. *Proximate Cause*

The district court relied on *United States v. Matus-Leva*, 311 F.3d 1214 (9th Cir. 2002), for its definition of "resulting

in death." This court in *Matus-Leva* considered the question of whether § 1324(a)(1)(B)(iv) has a mens rea requirement. We held that a defendant need not have intended his conduct to have "resulted in death" to be guilty under § 1324(a)(1)(B)(iv). *Id.* at 1219. Rather, the defendant need only have been aware that he was engaging in conduct that allowed others "*to be exposed* to life-threatening conditions during the smuggling process." *Id.* (emphasis added). The issue in *Matus-Leva* was mental state, not causation. To answer the question of whether § 1324(a)(1)(B)(iv) requires only but-for causation or also proximate causation, we must look elsewhere.

**[2]** A "basic tenet of criminal law" is that, when a criminal statute requires that the defendant's conduct has resulted in an injury, "the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury." *United States v. Spinney*, 795 F.2d 1410, 1415 (9th Cir. 1986). In *Spinney*, the defendant was convicted of conspiracy to commit simple assault and fined for being convicted of a "misdemeanor resulting in death." 18 U.S.C. § 3623(a)(4) (Supp. II 1985) (current version at 18 U.S.C. § 3571(b)(4)). Spinney and a friend intended to scare the victim, but things "got out of hand" and his co-conspirator shot and killed the victim. *Spinney*, 795 F.2d at 1413. The defendant argued that he was not guilty because his co-conspirator's actions constituted a superseding cause of the victim's death. *Id.* at 1415. This court agreed that the statute required the Government to prove proximate cause, but affirmed the defendant's conviction because the victim's death was an "entirely foreseeable" result of the conspiracy. *Id.* at 1416. Pineda-Doval argues that, just as the offense "misdemeanor resulting in death" includes a proximate cause requirement, so too should "transportation of illegal aliens resulting in death."

The decision in *Spinney* has been followed, most notably in *United States v. Main*, 113 F.3d 1046 (9th Cir. 1997).[3] In

---

[3]*See also United States v. Mendoza*, 244 F.3d 1037, 1045 & n.4 (9th Cir. 2001) (assuming without deciding that 18 U.S.C. § 32(6), which

*Main*, the court held that the involuntary manslaughter statute, 18 U.S.C. § 1112, required the "prosecution [to] prove that the defendant's act or omission was the proximate cause of the death of the victim." *Id*. at 1050. Other circuits have employed the reasoning of *Spinney* and have interpreted "resulting in death" statutory language as implying proximate cause,[4] although none has looked specifically at § 1324(a)(1)(B)(iv).

---

criminalizes acts of violence that endanger the safety of an aircraft in flight, requires that the defendant's conduct be the proximate cause of the endangerment); *United States v. Hicks*, 217 F.3d 1038, 1048-49 (9th Cir. 2000) (interpreting the phrase "resulted from" in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.3(a)(3) as requiring that the harm have been caused directly or flowed naturally from the defendant's conduct); *United States v. Hanousek*, 176 F.3d 1116, 1124 (9th Cir. 1999) (interpreting 33 U.S.C. §§ 1319(c)(1)(A) and 1321(b)(3), portions of the Clean Water Act criminalizing the negligent discharge of pollutants into the navigable waters of the United States, to require that the defendant's conduct be the proximate cause of the discharge).

[4]*See United States v. Martinez*, 588 F.3d 301, 318-19 (6th Cir. 2009) (holding that 18 U.S.C. § 1347(a), which provides for an enhanced sentence if a health care fraud "results in death," requires proximate cause); *United States v. Montgomery*, 550 F.3d 1229, 1235-36 (10th Cir. 2008) (holding that U.S.S.G. § 5K2.1, which calls for an upwards departure "[i]f death resulted," applies if the defendant should have foreseen that his conduct could result in death); *United States v. Diaz*, 285 F.3d 92, 100-01 (1st Cir. 2002) (same); *United States v. Fortier*, 242 F.3d 1224, 1232-33 (10th Cir. 2001) ("We have interpreted the words 'resulted from' in the Guidelines as permitting an increased sentence for harms that were a reasonably foreseeable consequence of a defendant's conduct. . . ." (some internal quotation marks omitted)), superseded by statute on other grounds, PRO-TECT Act of 2003, Pub. L. No. 108-21, 117 Stat. 650, 670-71; *United States v. Harris*, 701 F.2d 1095, 1101 (4th Cir. 1983) ("[T]he phrase 'if death results' [in 18 U.S.C. § 242] requires only that the death ensued as a proximate result . . . ." (internal quotation marks omitted)); *United States v. Marler*, 756 F.2d 206, 215-16 (1st Cir. 1985) (same); *United States v. Hayes*, 589 F.2d 811, 820-21 (5th Cir. 1979) (same); *United States v. Guillette*, 547 F.2d 743, 749 (2d Cir. 1976) ("We find the principle of proximate cause embodied in [18 U.S.C.] § 241 through the phrase 'if death results.' ").

**[3]** We presume that the Government must prove proximate cause whenever the charged offense requires a certain result. This presumption can be rebutted. In *United States v. Houston*, 406 F.3d 1121 (9th Cir. 2005), this court held that "if death results" statutory language did not imply proximate cause. The defendant was convicted of "knowingly or intentionally . . . distribut[ing] . . . a controlled substance" under 21 U.S.C. § 841(a)(1). *Id.* at 1122. Section 841(b)(1)(C) provides that a 20-year minimum sentence applies "if death . . . results from the use of such substance." *Id.* The court distinguished *Main*:

> Although we noted in *United States v. Main* that "[a] basic tenet of criminal law is that the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury[,]" it was important in *Main* that proximate cause was "implicit in the common understanding of the crime" at issue (involuntary manslaughter).

*Houston*, 406 F.3d at 1123 (internal citations omitted) (alteration in *Houston*). The court found that proximate cause is not commonly understood to be an element of the drug trafficking crimes defined in § 841(a)(1) and accordingly declined to read such a requirement into the statute. *Id.* Except for the Seventh Circuit, all other courts of appeals that have addressed this question have agreed with *Houston*. *See United States v. De La Cruz*, 514 F.3d 121, 137 (1st Cir. 2008) (collecting cases), *cert. denied*, 129 S. Ct. 2858 (2009). *But see United States v. Hatfield*, 591 F.3d 945, 950-51 (7th Cir. 2010) (criticizing the reasoning of *Houston*).

Sentencing factors applicable to drug crimes seem to be the exception to the rule that the Government prove proximate cause when the charging statute calls for a certain result, as well as the related rule that the Government prove that the defendant intended the conduct that the statute prohibits. In such cases, "[i]t is by no means unusual to peg the sentence

to factors that were not known — or even foreseeable — to the defendant at the time the crime was committed." *United States v. Velasquez*, 28 F.3d 2, 5 (2d Cir. 1994). For example, the minimum and maximum authorized sentences vary depending on the amount of drugs distributed, 21 U.S.C. § 841(b)(1), and "a defendant is responsible for the total amount of drugs in his own possession, regardless of whether the amount was foreseeable," *United States v. Mesa-Farias*, 53 F.3d 258, 259 (9th Cir. 1995). A defendant who sells drugs within 1000 feet of a school is subject to twice the maximum penalties for drug distribution, even if he did not know or could not have foreseen that he was within the proscribed distance. *United States v. Pitts*, 908 F.2d 458, 461 (9th Cir. 1990) (discussing 21 U.S.C. § 860(a)). The same is true for defendants who employ a minor in drug trafficking; the maximum authorized sentence is doubled regardless of whether the defendant knew or could have foreseen that the person under his employ was a minor. *United States v. Valencia-Roldan*, 893 F.2d 1080, 1083 (9th Cir. 1990) (discussing 21 U.S.C. § 859b, now codified at 21 U.S.C. § 861). A 10-year minimum sentence applies if a firearm is discharged during the commission of a drug trafficking crime. 21 U.S.C. § 924(c)(1)(A)(iii). The defendant need not have intended or have been able to foresee that the gun would go off. *See Dean v. United States*, 129 S. Ct. 1849, 1855-56 (2009). Given the prevailing sense in the courts that drug trafficking is a "strict liability" offense, *United States v. Soler*, 275 F.3d 146, 152 (1st Cir. 2002), the decision in *Houston* is unsurprising.

**[4]** Unlike in *Houston*, there is no reason why the general rule that the Government must prove proximate cause should not apply to 8 U.S.C. § 1324(a)(1)(A)(ii) & (a)(1)(B)(iv), or why we should depart from *Spinney* and *Main*. Therefore, we hold that a defendant may be found guilty of transportation of illegal aliens resulting in death only if the Government proves beyond a reasonable doubt that the defendant's conduct was the proximate cause of the charged deaths.

*c.   Harmless Error*

The district court's failure to instruct the jury on the proximate cause element of "resulting in death" is harmless "if we conclude that it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1197 (9th Cir. 2000) (en banc) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)); *see also United States v. Smith*, 561 F.3d 934, 941 (9th Cir.) (en banc), *cert. denied*, 130 S. Ct. 445 (2009). Although Pineda-Doval is correct that the district court should have asked the jury to determine whether his driving was the proximate cause of the deaths of ten of his passengers, the district court's error was harmless beyond a reasonable doubt.

**[5]** Generally, "[t]o prove proximate cause, the government must establish that the harm was a foreseeable result of the conduct." *Hanousek*, 176 F.3d at 1123 (citing *Main*, 113 F.3d at 1049). Proximate cause is drawn more broadly when the intervening action was not a coincidence or unrelated to the defendant's prior conduct, but rather was a response to that conduct. "Foreseeability is required as to the former, but in the latter instance the question is whether the intervening act was abnormal—that is, whether, looking at the matter with hindsight, it seems extraordinary." 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.5(d), at 453 (2d ed. 2003); *see also People v. Schmies*, 51 Cal. Rptr. 2d 185, 194 (Ct. App. 1996) (holding that officers' conduct was in response to defendant's fleeing the scene, therefore officers' conduct constituted a superseding cause only if it was "unusual, abnormal, or extraordinary"). The Border Patrol agents deployed the CTDD in response to Pineda-Doval's illegal actions, therefore the question here is whether the actions of the Border Patrol were extraordinary. At trial, the Government should have been required to prove that " 'any variation between the result intended [by Pineda-Doval] and the result actually achieved [was] not so extraordinary that it would be unfair to hold the

defendant responsible for the actual result.' " *Spinney*, 795 F.2d at 1415 (quoting W. LaFave & A. Scott, *Criminal Law* § 35, at 246 (1972)).

**[6]** Pineda-Doval's failed attempt to swerve around the spike strip was the proximate cause of the deaths of ten individuals. It was entirely foreseeable that the Border Patrol would deploy a CTDD against the defendant's Suburban and that Pineda-Doval's dangerous driving would end in an accident. Pineda-Doval must have known that Agents Russell and Lindsay would try to stop him by using a CTDD, since he had been the target of a spike strip twice before. He also must have known that he was in danger; when he saw the spike strip being drawn across the road, he shouted to his passengers, "Commend yourselves to God, because we are being pursued." Pineda-Doval was in a police chase, traveling at 45 miles per hour, in an overcrowded vehicle that lacked seat belts — and then deliberately and sharply swerved off the road. No reasonable jury could have found that a car accident was an extraordinary result.

The defendant tries to pin some of the responsibility for the accident on Border Patrol negligence, arguing that Agent Russell deployed the spike strip too early and thereby gave him an opportunity to swerve. Had Agent Russell complied with CBP policies governing spike strips and deployed the CTDD *just* before the Suburban drove past, Pineda-Doval would not have had time to react, and the accident would have been averted. We cannot agree that the actions of Agents Lindsay and Russell constituted a superseding cause of the accident. The agents were both careful in deploying the spike strip. The agents waited until Pineda-Doval had reached a straight stretch of Martinez Lake Road with very little traffic, knowing that it would have been dangerous if they tried to stop him earlier, where the road was more uneven.

**[7]** Even if we assumed that Agent Russell had been negligent, Pineda-Doval's conviction would still stand. Generally

"a police officer's conduct in pursuing a fleeing perpetrator, even if it was negligently performed and resulted in the death of the officer or a third party, is not deemed conduct so unusual, abnormal or extraordinary as to constitute an [sic] superseding cause." 1 La Fave, *supra*, § 6.4(g)(2), at 491 (2d ed 2003) (internal quotation marks omitted). "Occasional negligence" that should have been anticipated by the defendant does not defeat proximate cause, *Prosser and Keeton on Torts* § 44, at 304 (5th ed. 1984), and mistakes and accidents during police chases are hardly unexpected.[5] If we assume that Agent Russell made a mistake by pulling the CTDD across the road several seconds too early, this mistake was not so extraordinary as to break the chain of causation. Pineda-Doval created the dangerous conditions on Martinez Lake Road and, because he refused to pull over in response to Agent Lindsay's lights and sirens, forced the Border Patrol to use drastic measures to stop him. The resulting deaths of his ten passengers were tragic, but not unexpected. The error in the jury instructions was harmless beyond a reasonable doubt.

---

[5]The Fifth Circuit has observed that

> the empirical evidence appears to support the "intuitive belief" that fleeing by vehicle involves a serious potential risk of physical injury to others. We note that according to a study funded by the Justice Department and collecting police pursuit data from fifty-six law enforcement agencies in thirty states, 314 injuries (including fatal injuries) to police and bystanders resulted from 7,737 reported pursuits.

*United States v. Harrimon*, 568 F.3d 531, 537 (5th Cir.) (citing Cynthia Lum & George Fachner, Int'l Assoc. of Chiefs of Police, *Police Pursuits in an Age of Innovation and Reform* 57 (2008)) (internal citations omitted), *cert. denied*, 130 S. Ct. 1015 (2009); *see also United States v. Spells*, 537 F.3d 743, 752 (7th Cir. 2008) ("Taking flight calls the officer to give chase, and aside from any accompanying risk to pedestrians and other motorists, such flight dares the officer to needlessly endanger himself in pursuit."), *cert. denied*, 129 S. Ct. 2379 (2009); *United States v. West*, 550 F.3d 952, 969 (10th Cir. 2008), *overruled on other grounds as recognized in United States v. McConnell*, 605 F.3d 822 (10th Cir. 2010); *Schmies*, 51 Cal. Rptr. 2d at 196 n.10 ("[V]ehicle pursuits and the danger created thereby are . . . foreseeable . . . .").

### III.

In addition to finding fault with the district court's causation instructions, Pineda-Doval also argues that there were two errors in the instructions regarding the lesser included offense of transportation of illegal aliens. First, he argues that those instructions incorrectly required the jury unanimously to find him not guilty of transportation of illegal aliens resulting in death before jurors could consider the lesser included offense of transportation of illegal aliens. Second, he argues that the verdict form was confusing because it asked the jury whether Pineda-Doval was guilty of the lesser included offense of transportation of illegal aliens and then referred them to the charges in the Indictment, which set forth the greater-aggravated offense. We consider each of these arguments in turn.

### a.  *Unanimity Instruction*

**[8]** In *United States v. Jackson*, 726 F.2d 1466 (9th Cir. 1984) (per curiam), the Ninth Circuit approved two methods for instructing juries on lesser included offenses. First, a jury may be instructed that it must unanimously acquit on the greater charge before considering the lesser included charge. Second, a jury may be instructed to consider the lesser included charge if unable after reasonable effort to reach a verdict on the greater offense. *Id.* at 1469. So long as the defendant makes a "timely request," *id.*, he is entitled to his choice of lesser included offense instruction.

**[9]** Pineda-Doval's proposed instructions took the second route; they told the jury that they could consider the lesser included offense of transportation of illegal aliens "[if] *any of you* are not convinced that the defendant, Adan Pineda-Doval, caused the death of" (emphasis added) each of the aliens named in the Indictment. After discussing the lesser included instructions with the court, defense counsel agreed to the Government's proposed language, which told the jurors that

they could consider the lesser included offense of transportation of illegal aliens only "[i]f *you unanimously* find the Defendant not guilty" (emphasis added) of transportation resulting in death. The district court adjourned for the day and told the parties that they could raise any final objections to the jury instructions or verdict form the next morning. When court resumed, defense counsel did not renew his request for his proposed "if any of you" instruction. Pineda-Doval waived his right to the first formulation because he "considered the controlling law and, 'in spite of being aware of the applicable law, . . . accepted [the] instruction' " that he now argues was incorrect. *United States v. Burt*, 143 F.3d 1215, 1217 (9th Cir. 1998) (quoting *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc)). He cannot on appeal challenge the instruction that he affirmatively agreed to in the district court.

### b. Verdict Form

The second error in the lesser included offense instructions, Pineda-Doval argues, is that the verdict form told the jury that "transportation of illegal aliens" and "transportation of illegal aliens resulting in death" are identical offenses. The form asked the jurors to find Pineda-Doval guilty or not guilty of "Transportation of Rosalva Rivas-Vasquez, an Illegal Alien, Resulting in Death as charged in Count 1 of the Superseding Indictment." The form repeated this question ten times, once for each deceased. If the jurors unanimously found the defendant not guilty of the greater offense, the verdict form then asked them to determine whether Pineda-Doval was guilty or not guilty of "Transportation of an Illegal Alien, Rosalva Rivas Vasquez, *as charged in Count 1 of the Superseding Indictment*." (Emphasis added.) Again, the form repeated this question ten times, once for each deceased. Because the verdict form for the lesser included offense referred the jurors back to the Indictment, which charged the greater aggravated offense, the defendant argues that the district court did not

actually ask the jurors whether he was guilty of the lesser included offense.

Defense counsel did not object to the verdict form at trial, therefore review is for plain error only. *See United States v. Reed*, 575 F.3d 900, 926 (9th Cir.), *cert. denied*, 130 S. Ct. 1729 (2009). To determine whether the jury was misled, we must consider the instructions and the verdict form together. *See Boggs v. Lewis*, 863 F.2d 662, 666 (9th Cir. 1988) (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1418 (9th Cir. 1986)).

**[10]** The jury was not given a copy of the Indictment, but they each had a copy of the written instructions. The instructions clearly listed and defined the five elements of transportation of illegal aliens resulting in death, then told the jury that they could consider the lesser included offense if they unanimously decided that Pineda-Doval's conduct did not result in the ten charged deaths, and finally listed and defined the four elements of transportation of illegal aliens. The jurors, reading the verdict form and the instructions together, must have understood that the difference between the greater and lesser offenses was that the lesser offense did not require that the defendant's conduct have resulted in the deaths of the ten individuals named in the Indictment. Because there is no "reasonable likelihood that the jury" thought the greater and lesser offenses were equivalent, there was no error, let alone plain error, in the verdict form. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). The defendant's challenge to the lesser included verdict form fails.

## IV.

Pineda-Doval challenges the district court's order excluding evidence of Customs and Border Patrol policies governing CTDD deployment and evidence that Agents Lindsay and Russell failed to comply with those policies. Orders to exclude evidence are reviewed for abuse of discretion. *See*

*United States v. Chang Da Liu*, 538 F.3d 1078, 1085 (9th Cir. 2008) (citing *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1062 (9th Cir. 2004)). A conviction may be reversed on the basis of an incorrect evidentiary ruling "only if the error more likely than not affected the verdict." *Id.*

The district court concluded that the "resulting in death" element of 8 U.S.C. § 1324(a)(1)(B)(iv) does not require that the defendant's conduct be the proximate or "immediate" cause of the charged deaths, only the but-for cause of those deaths. Accordingly, evidence of the intervening negligence of the Border Patrol agents was irrelevant and thus inadmissible under Rule 401. The court went on to hold that, even if evidence of the CBP's policies on spike strips was relevant, it should still be excluded under Rule 403 because it "would cause jury confusion and would create a trial within a trial to determine whether the agents complied with the tire spike policy."

**[11]** Contrary to the district court's conclusion, evidence of CBP policies on spike strips was relevant to the issue of causation. As we have already explained, 8 U.S.C. § 1324(a)(1)(B)(iv) does contain a proximate cause requirement. For a defendant to be found guilty of transportation of illegal aliens resulting in death, the Government must prove that the defendant's criminal conduct was the but-for cause *and* the proximate cause of the charged deaths. Evidence of CBP policies governing spike strips, and Agent Lindsay's and Agent Russell's compliance with those policies, is relevant because it goes to the question of whether their actions were extraordinary enough to break the chain of causation between Pineda-Doval's conduct and the deaths of ten of his passengers.[6]

---

[6]To determine proximate cause, the question is not whether the actions of the Border Patrol agents were reasonable, but rather if they were foreseeable or extraordinary. Evidence of negligence goes indirectly to the question of foreseeability because we assume that people will generally conduct themselves in a reasonable manner. That said, "occasional negligence" that should have been anticipated by the defendant does not defeat proximate cause. *See Prosser and Keeton*, *supra*, § 44, at 304.

*See Spinney*, 795 F.2d at 1415; 1 W. LaFave, *supra*, § 6.4(g)(2), at 491. The district court should not have excluded that evidence under Rule 401.

Nor should the district court have excluded evidence of CBP policies under Rule 403. The probative value of evidence of the CBP policies was not "substantially outweighed" by the risk of unfair prejudice, confusion, or waste of time. Fed. R. Evid. 403. The only real factual dispute at Pineda-Doval's trial was whether his driving caused the ten charged deaths. Evidence of the CBP policies had significant probative value because it went to the question of whether Agent Russell's conduct constituted a superseding cause of the accident. The excluded evidence posed no risk of unfair prejudice, unnecessary delay, or jury confusion. The district court abused its discretion by excluding the evidence under Rule 403. *See United States v. Cohen*, 510 F.3d 1114, 1127 (9th Cir. 2007); *United States v. Boulware,* 384 F.3d 794, 808 (9th Cir. 2004).

Furthermore, the improper exclusion of evidence of CBP policies essentially deprived Pineda-Doval of all evidence in his favor, and thus violated his constitutional right to " 'present a complete defense.' " *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). We review de novo whether an evidentiary error rises to the level of a constitutional violation. *See United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). The Ninth Circuit has found such violations where the district court incorrectly excluded evidence that was necessary for the defendant to refute a critical element of the prosecution's case, *see Boulware*, 384 F.3d at 808 (excluded evidence that showed defendant did not own the property for which he was accused of failing to pay taxes); *United States v. Whitman*, 771 F.2d 1348, 1351 (9th Cir. 1985) (excluded evidence that contradicted prosecution's theory of motive), and evidence that was essential to the defendant's alternative theory of the case, *see Stever*, 603 F.3d at 755-57 (excluded evidence that

Mexican drug trafficking organizations had a practice of trespassing on farmland and planting marijuana).[7]

[12] By prohibiting Pineda-Doval from introducing evidence of CBP policies on spike strip deployment and evidence that the Border Patrol agents failed to comply with that policy, the district court effectively denied the defendant the only argument that he had. There was no question that Pineda-Doval's passengers were illegal aliens and that he was transporting them as part of a smuggling operation.[8] All that was left to argue was causation. After the district court ordered that evidence of CBP policies on spike strips could not be introduced at trial, it allowed defense counsel to make a proffer. Counsel indicated that he would have called Agents Mario Reina and Roland Castellanos to the stand in support of his argument that Agent Russell's too-early deployment of the CTDD constituted a superseding cause of the car accident. They would have testified, according to the defendant's prof-

---

[7]The Supreme Court has found a violation of the right to present a complete defense in cases where a state evidentiary rule, on its face, "significantly undermined fundamental elements of the defendant's defense," but did little or nothing to promote a legitimate state interest. *United States v. Scheffer*, 523 U.S. 303, 315 (1998); *see also Holmes*, 547 U.S. at 324. For example, the Supreme Court has struck down rules that "precluded a defendant from testifying, excluded testimony from key percipient witnesses, or excluded the introduction of all evidence relating to a crucial defense." *Moses v. Payne*, 555 F.3d 742, 758 (9th Cir. 2009). This case falls into the last category. The Supreme Court cases summarized in *Moses* are not directly on point because they all involved state evidentiary rules that had been correctly applied by the trial court, whereas this case involves an incorrectly applied federal rule. But they are nonetheless instructive because they illustrate how badly a defendant's case must be handicapped before a violation of the right to present a defense will be found.

[8]Pineda-Doval half-heartedly contended at trial that he was not the driver of the Suburban but he did not press this point. For good reason. All of the testifying victims identified Pineda-Doval as the driver. Additionally, the INS officer who interviewed Pineda-Doval after the accident testified that Pineda-Doval admitted to being the driver at that interview.

fer, that they had been formally taught how to use CTDDs, and that their training and the manufacturer's recommendations instructed that spike strips should be deployed in such a fashion that the approaching vehicle is surprised and does not have a chance to evade. The agents also would have testified that Agent Russell deployed the CTDD too early, which allowed the Suburban to swerve and crash. This prohibited evidence comprised the entirety of the defendant's superseding cause argument. Because the district court incorrectly "excluded the introduction of all evidence relating to a crucial defense," *Moses*, 555 F.3d at 758, that evidentiary error amounted to a deprivation of Pineda-Doval's right to present a complete defense.

[13] "A violation of the right to present a defense requires reversal of a guilty verdict unless the Government convinces us that the error was harmless beyond a reasonable doubt." *Stever*, 603 F.3d at 757. The district court's decision to exclude evidence of Border Patrol negligence was harmless beyond a reasonable doubt for the same reasons that the error in the jury instructions defining "resulting in death" was harmless. To show that the actions of Agent Russell constituted a superseding cause that broke the chain of causation between Pineda-Doval's dangerous driving, that negligence would have had to be "so extraordinary that it would be unfair to hold the defendant responsible" for the resulting accident and deaths. *Spinney*, 795 F.2d at 1415 (internal quotation marks omitted). Even assuming that the defendant persuaded the jury that timing was essential to the correct and safe deployment of a CTDD and that Agent Russell made the mistake of pulling the spike strip across the road several seconds too early,[9] no reasonable jury could have found that Agent

---

[9]Agent Russell testified that he pulled the CTDD across Martinez Lake Road when the Suburban was 150 feet away. Evidence suggested that Pineda-Doval was driving somewhere between 45 and 70 miles per hour. If we assume the low end of that range, then it should have taken Pineda-Doval just over two seconds to hit the spike strip. For the purposes of harmless error analysis, we will assume that Agent Russell gave Pineda-Doval several seconds of lead time.

Russell's actions were extraordinary and could not have been foreseen by Pineda-Doval. *See Schmies*, 51 Cal. Rptr. 2d at 196 ("This illegal and dangerous act by defendant caused the officers to pursue him and ultimately caused the fatal accident. It adds not one whit to say that the officers violated the CHP pursuit guidelines."); *see also supra* note 5 and accompanying text. The district court's error in excluding evidence of CBP policies on spike strips was harmless beyond a reasonable doubt.

## V.

During the trial, the district court permitted the jury to leave the courtroom and view the crushed Suburban. The judge also admitted photographs of Veronica Reyes-Bonilla and the mother of Ana Rosales-Rivas, two of Pineda-Doval's passengers. Ana Rosales-Rivas's mother died in the crash. The defendant argues that the jury should not have been permitted to view the Suburban or the photographs of the two passengers because the evidence was not relevant and because it inflamed the passions of the jury. Defense counsel objected at trial to the viewing of the Suburban and the introduction of the photographs, therefore we review the court's decision to admit the contested evidence for abuse of discretion. *Chang Da Liu*, 538 F.3d at 1085.

Prior to trial Pineda-Doval agreed to stipulate, *inter alia*, that the Suburban "was involved in a single-vehicle rollover collision," and that the ten deceased aliens were passengers in the Suburban and died as a result of injuries sustained in the crash. Attached to the stipulation were fifteen photographs of the crushed Suburban taken from a variety of angles. In exchange, the Government agreed "not [to] offer photographs or electronic images that show victims of the rollover collision unless those photos are necessary to the testimony of a witness and cannot be redacted to avoid showing the victim(s)."

The Government did not agree that it would not ask that the jury be allowed to view the crushed Suburban. Though the parties stipulated to the fact that the Suburban had been involved in a car accident, the defendant cannot complain that the prosecution introduced tangible evidence of that accident instead of relying on the stipulation's dry statements of fact and the attached pictures. The Government is entitled " 'to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might . . . rob the evidence of much of its fair and legitimate weight.' " *Old Chief v. United States*, 519 U.S. 172, 187 (1997) (quoting *Parr v. United States*, 255 F.2d 86, 88 (5th Cir. 1958)). It cannot be that, when a defendant agrees to stipulate to certain facts in exchange for the Government's promising not to introduce certain evidence, the Government waives the right to introduce that evidence as well as evidence of the stipulated facts. Contrary to the defendant's arguments, the stipulation did not make evidence of the crash irrelevant and thus excludable under Rule 401.

**[14]** Under Rule 403, evidence may be excluded if "it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Yazzie*, 59 F.3d 807, 811 (9th Cir. 1995) (internal quotation marks and emphasis omitted). "As long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission, . . . the demands of Rule 403 have been met." *Boyd v. City of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009) (internal quotation marks omitted). The district court explained that it was overruling the defendant's objection because viewing the crushed Suburban would help the jury understand the events being recounted by the witnesses, and reasoned that the viewing would not be prejudicial so long as the Suburban was in the same state as it was immediately after the crash. *Cf.*

*Hughes v. United States*, 377 F.2d 515, 516 (9th Cir. 1967) (jury's viewing of premises of questionable value because photographs of premises already admitted into evidence). Because the Suburban was central to the prosecution's story, and viewing the Suburban would help the jury fully grasp what happened on Martinez Lake Road on that fateful day, we cannot say that the district court's "decision lies beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000) (citing *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).

**[15]** The photos of Reyes-Bonilla and Rivas-Vasquez, both passengers in the Suburban, were covered by the letter of the Government's agreement not to introduce "photographs or electronic images that show victims of the rollover collision unless those photos are necessary to the testimony of a witness." Where the Government violates a pre-trial promise not to introduce certain evidence, the defendant's conviction should be reversed unless the violation was harmless. *See, e.g.*, *United States v. Shapiro*, 879 F.2d 468, 472 (9th Cir. 1989) (citing *United States v. Hodges*, 770 F.2d 1475, 1480 (9th Cir. 1985)). The photographs of Reyes-Bonilla and Rivas-Vasquez were unremarkable. The picture of Reyes-Bonilla, a passenger of the Suburban who testified at trial, was taken soon after the accident. It depicts her sitting on gravel, looking stunned and perhaps a little sad, but uninjured. And the picture of Rivas-Vasquez, one of the passengers that died, seems to be a family photograph taken well before the accident. She is standing by herself with no expression on her face. It is difficult to see what effect these pictures could have had on the jury. The pictures should not have been admitted, but we will not disturb Pineda-Doval's conviction because that error was harmless.

## VI.

Pineda-Doval argues that the prosecutor committed misconduct by misstating the law in his closing arguments.

Because the defendant objected and moved for a mistrial on the basis of prosecutorial misconduct, this court reviews the district court's denial of his motion for abuse of discretion. *United States v. Cardenas-Mendoza*, 579 F.3d 1024, 1029 (9th Cir. 2009) (citing *United States v. Washington*, 462 F.3d 1124, 1135 (9th Cir. 2006)).

During closing arguments, the prosecutor twice suggested that "the law holds someone who commits a crime responsible for the foreseeable consequences of that crime," and that the actions of a third party are irrelevant so long as the ultimate result was foreseeable. Pineda-Doval argues that this was misconduct because a "prosecutor should not misstate the law in closing argument." *United States v. Berry*, 627 F.2d 193, 200 (9th Cir. 1980) (citing *United States v. Artus*, 591 F.2d 526, 528 (9th Cir. 1979)). Not only did the prosecutor correctly state the law — "[t]o prove proximate cause, the government must establish that the harm was a foreseeable result of the conduct," *Hanousek*, 176 F.3d at 1123 — he essentially advocated the proximate cause argument that the defendant now presses on appeal. There was no misconduct.

## VII.

**[16]** Pineda-Doval argues that, even if the court finds that the trial errors were harmless when viewed in isolation, those errors taken together prejudiced the defendant. *See Wooten v. Kirkland*, 540 F.3d 1019, 1022 n.1 (9th Cir.) (citing *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)), *cert. dismissed*, 129 S. Ct. 621 (2008), *cert. denied*, 129 S. Ct. 2771 (2009). We have found three errors below, all independently harmless: the instructions should have defined "resulting in death" to require the government to prove proximate causation, the defendant should have been allowed to introduce evidence of CBP policies governing spike strips, and the district court should not have permitted the Government to introduce the photographs of Veronica Reyes-Bonilla and Ana Rivas-Vasquez's mother. Because the introduction of the

photographs could only have had a *de minimus* impact on the jury, and the two other errors are premised on the same incorrect legal conclusion, the district court effectively made only one mistake: holding that the Government did not have to prove proximate causation. As explained above, even if Pineda-Doval had introduced all of the evidence he wanted and the jury had been asked to find proximate cause, he would not have been able to convince a reasonable jury that the rollover was an extraordinary and abnormal result of his dangerous driving. There was no prejudice, cumulative or otherwise. We affirm the defendant's conviction.

## VIII.

Pineda-Doval challenges his sentence of life imprisonment. The Sentencing Guideline for transportation of illegal aliens resulting in death directs the district court to apply the appropriate murder guideline if, had the transportation occurred in federal territorial jurisdiction, the killing would have constituted murder. The defendant argues that the district court should not have applied the second-degree murder guideline because the court did not specifically find that he acted with "malice aforethought," as required by Federal Rule of Criminal Procedure 32.

[17] The crime of transportation of illegal aliens resulting in death is covered by Section 2L1.1 of the Sentencing Guidelines, which instructs that "[i]f any person was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the special maritime and territorial jurisdiction of the United States, apply the appropriate murder guideline from Chapter Two, Part A, Subpart 1." U.S.S.G. § 2L1.1(c).[10] Following the cross-reference to § 2A1, there are two potentially applicable murder guide-

---

[10]All citations are to the 2005 version of the U.S. Sentencing Guidelines, which both parties agree applies to Pineda-Doval.

lines: first-degree murder (§ 2A1.1) and second-degree murder (§ 2A1.2).

Defense counsel argued that the second-degree murder Guideline did not apply to Pineda-Doval because he did not act with malice aforethought. *See United States v. Houser*, 130 F.3d 867, 871 (9th Cir. 1997). Rather he drove recklessly, a mental state contemplated by the Guideline applicable to the transportation of illegal aliens, which provides for an upwards adjustment for recklessness. U.S.S.G. § 2L1.1(b)(5). That Guideline suggested a sentence between 168 and 210 months.

At the sentencing hearing, the district court stated that it had considered Pineda-Doval's written objections to the Pre-Sentence Report, which it noted "extensively" argued "why the cross-reference shouldn't apply." The court found that Pineda-Doval's "driving was reckless" and therefore "the cross-reference applies." Accordingly, it calculated the Guidelines sentence using the second-degree murder guideline, U.S.S.G. § 2A1.2, which produced a recommended sentence of life imprisonment.

### a.    Malice Aforethought

Murder is "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111. First-degree murder requires an additional element; the killing must either be "willful, deliberate, malicious, and premeditated," or be committed in the course of perpetrating one of the serious felonies listed in § 1111. *Id.* "Any other murder is murder in the second degree." *Id.*

The Ninth Circuit has variously defined malice aforethought as " 'a callous and wanton disregard of human life,' " *Houser*, 130 F.3d at 871 (quoting *United States v. Celestine*, 510 F.2d 457, 459 (9th Cir. 1975)); " 'extreme indifference to the value of human life,' " *United States v. Hernandez-Rodriguez*, 975 F.2d 622, 627 (9th Cir. 1992) (quoting *United*

*States v. Lesina*, 833 F.2d 156, 159 (9th Cir. 1987)); " 'a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences,' " *Lesina*, 833 F.2d at 159 (quoting *Celestine*, 510 F.2d at 459); and "the state of mind with which one intentionally commits a wrongful act without legal justification or excuse," *Celestine*, 510 F.2d at 459.[11]

These flowery descriptions do not cast much light on malice aforethought. The legal meaning of the phrase "does not even approximate its literal meaning." 2 LaFave, *supra*, § 14.1, at 416. Malice aforethought was meant literally at early common law; murder required "malice," an intent to kill and perhaps also an element of hatred, and "aforethought," advance planning or deliberation. *Id.* § 14.1(a). Courts gradually expanded the crime of murder to cover killings that, while not specifically intended or planned, were grievous enough to be considered murder. *See Tison v. Arizona*, 481 U.S. 137, 156-58 (1987) (discussing the expansion of malice aforethought since early American common law). As a result, in modern criminal law, malice aforethought covers four dif-

---

[11]Several other circuits have described malice aforethought as conduct that is "reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001) (internal quotation marks omitted); *accord United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003); *United States v. Milton*, 27 F.3d 203, 206 (6th Cir. 1994); *United States v. Black Elk*, 579 F.2d 49, 51 (8th Cir. 1978); *United States v. Cox*, 509 F.2d 390, 392 (D.C. Cir. 1974). Other circuits describe malice slightly differently. *See United States v. Hicks*, 389 F.3d 514, 530 (5th Cir. 2004) ("[A] defendant must have: (1) acted with gross negligence, meaning a wanton or reckless disregard for human life, and (2) had knowledge that his or her conduct was a threat to the life of another or knowledge of such circumstances as could reasonably have enabled the defendant to foresee the peril to which his or her act might subject another." (internal quotation marks and alterations omitted)); *Gov't of Virgin Islands v. Lake*, 362 F.2d 770, 774 (3d Cir. 1966) ("[A] wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences.").

ferent kinds of mental states: (1) intent to kill; (2) intent to do serious bodily injury; (3) depraved heart (i.e., reckless indifference); and (4) intent to commit a felony. 2 LaFave, *supra*, § 14.1, at 416.

The question here is whether Pineda-Doval is guilty of depraved-heart murder.[12] "[D]epraved-heart murder falls into the second degree murder category." *Id*. § 14.7(e), at 487. To act with this type of malice aforethought, a defendant's conduct must create a "*very high* degree of risk" of injury to other persons, he must be aware of that risk,[13] and he cannot have a justifiable reason for taking that risk. *Id*. § 14.4 (emphasis added). It is this aspect of malice aforethought — an awareness of an extreme risk — that the Ninth Circuit has tried to capture when it has described malice aforethought as "a callous and wanton disregard of human life," *Houser*, 130 F.3d at 871, and "an extreme indifference to the value of human life," *Hernandez-Rodriguez*, 975 F.2d at 627; *see also United States v. Serawop*, 410 F.3d 656, 663 n.4 (10th Cir. 2005) ("[W]e have . . . held that malice may be established by evi-

---

[12]There is no evidence that Pineda-Doval intended to kill or injure his passengers; in a misbegotten way, he was trying to help them. Although he was in the process of committing a felony at the time of the killings, transportation of illegal aliens is not one of the enumerated felonies that can support a felony-murder conviction. *See* 18 U.S.C. § 1111 (listing "arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children").

[13]The circuits agree that malice aforethought is evinced by conduct creating a very high degree of risk of serious bodily injury or death. It is not clear whether the defendant must realize that his conduct creates such a risk. *See* 2 LaFave, *supra*, § 14.4(b), at 441-44. However, we understand this court's decisions to require subjective awareness. *See Lesina*, 833 F.2d at 159 (" 'The difference between that recklessness which displays . . . such extreme and wanton disregard for human life as to constitute 'malice' and that recklessness that amounts only to manslaughter lies in the quality of awareness of the risk.' " (quoting *United States v. Dixon*, 419 F.2d 288, 292-93 (D.C. Cir. 1969) (Leventhal, C.J., concurring))).

dence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm. The concepts of 'depraved heart' and 'reckless and wanton, and a gross deviation from the reasonable standard of care' are functionally equivalent in this context." (internal citation and quotation marks omitted)).

Grossly negligent conduct that creates a high — but not very high — risk of injury to others can support a conviction for involuntary manslaughter, but not murder. Involuntary manslaughter requires proof

> (1) that the defendant acted with "gross negligence," defined as "wanton or reckless disregard for human life;" and (2) that the defendant had actual knowledge that his conduct was a threat to the lives of others, . . . or had knowledge of such circumstances as could reasonably be said to have made foreseeable to him the peril to which his acts might subject others.

*United States v. Crowe*, 563 F.3d 969, 973 (9th Cir. 2009) (quoting *United States v. Keith*, 605 F.2d 462, 463 (9th Cir. 1979)) (alteration in *Crowe*). The difference between gross negligence and malice aforethought is one of degree, not kind. Both require "a wanton or reckless disregard for human life," but that disregard must be "extreme" to support a finding of malice. *See Lesina*, 833 F.2d at 159; *see also Hernandez-Rodriguez*, 975 F.2d at 627; *United States v. Paul*, 37 F.3d 496, 499 (9th Cir. 1994).

Classic examples of second-degree murder include shooting a gun into a room that the defendant knows to be occupied, playing a game of Russian roulette, and driving a car at very high speeds along a crowded main street. *See* Samuel H. Pillsbury, *Crimes of Indifference*, 49 Rutgers L. Rev. 105, 124 (1996); 2 LaFave, *supra*, § 14.4(a), at 440-41; *see also e.g.*,

*Hicks*, 389 F.3d at 530 (finding malice aforethought where the defendant intentionally fired his gun at a police cruiser, likely knowing that it would be occupied); *Nestlerode v. United States*, 122 F.2d 56, 59 (D.C. Cir. 1941) (finding malice aforethought where defendant drove "at a reckless speed over the busiest thoroughfares in the city of Washington" and killed two pedestrians). Second-degree murder cases involving car accidents "have in common some form of exceptionally reckless driving, of so dangerous a nature that the possibility of a fatal collision would suggest itself to any reasonable observer." H.C. Lind, Annotation, *Homicide by Automobile as Murder*, 21 A.L.R.3d 116, 2[a]. Cases where the defendant drove recklessly, but not wildly, generally fall into the lesser categories of manslaughter or criminal negligence. *Id.*; *see also United States v. Fleming*, 739 F.2d 945, 948 (4th Cir. 1984) ("In the vast majority of vehicular homicides, the accused has not exhibited such wanton and reckless disregard for human life as to indicate the presence of malice on his part.").

The rule that merely reckless driving cannot provide the basis for a second-degree murder conviction is illustrated by *United States v. Hernandez-Rodriguez*, 975 F.2d 622 (9th Cir. 1992). The defendant in *Hernandez-Rodriguez* led Border Patrol agents on a three-hour high-speed chase, with speeds up to eighty miles per hour on the freeway and up to forty-five to fifty miles per hour on surface streets. *Id.* at 624. Though the court acknowledged that the defendant "did speed, he did go through stop signs, and he did ignore other traffic laws" while evading the police, it held that "something more" was required to establish the malice aforethought necessary to prove second-degree murder. *Id.* at 627.

### b.    *Federal Rule of Criminal Procedure 32*

Pineda-Doval argues that the district court did not specifically find that he acted with malice aforethought, and that such a finding was required by Federal Rule of Criminal Pro-

cedure 32 before the district court could apply the second-degree murder Guideline at sentencing.

**[18]** A district court's resolution of disputed matters relating to sentencing is governed by Federal Rule of Criminal Procedure 32. Rule 32 provides that a sentencing court "may accept any undisputed portion of the presentence report as a finding of fact," but must rule on "any disputed portion of the presentence report or other controverted matter." Fed. R. Crim. P. 32(i)(3)(A)-(B). The Ninth Circuit requires " 'strict compliance' " with Rule 32. *United States v. Tam*, 240 F.3d 797, 803 (9th Cir. 2001) (quoting *United States v. Houston*, 217 F.3d 1204, 1207 (9th Cir. 2000)). "If the district court fails to make the required findings or determinations, the sentence must be vacated and the defendant resentenced." *United States v. Fernandez-Angulo*, 897 F.2d 1514, 1516 (9th Cir. 1990) (en banc); *see also United States v. Gutierrez-Hernandez*, 94 F.3d 582, 584 (9th Cir. 1996). A district court's compliance with Rule 32 is reviewed de novo. *United States v. Herrera-Rojas*, 243 F.3d 1139, 1142-43 (9th Cir. 2001) (citing *United States v. Karterman*, 60 F.3d 576, 583 (9th Cir. 1995)).

**[19]** In this case, Rule 32 required the district court to make a specific finding of malice aforethought because the existence of malice was disputed and determined whether the cross-reference to the second-degree murder guideline applied. *See* Fed. R. Crim. P. 32(c) (requiring district court to rule on any "controverted" matter unless "unnecessary"). At the sentencing hearing, the district court found that Pineda-Doval's "driving was reckless" and that the "cross-reference applies." As explained above, "reckless" driving can provide a basis for either second-degree murder or involuntary manslaughter, depending on the degree of risk, the defendant's reasons for acting recklessly, and his awareness of the danger.

Therefore, the district court's finding of "recklessness" is not equivalent to a finding of "malice aforethought."[14]

Because this court requires strict compliance with Rule 32, we cannot give the district court the benefit of the doubt and assume it meant "malice aforethought" when it said "recklessness." *See, e.g.*, *Houston*, 217 F.3d at 1207 (ordering re-sentencing where district court seemed to assume, but did not explicitly decide, that death threats were attributable to defendant); *United States v. Thomas*, 355 F.3d 1191, 1200 (9th Cir. 2004) (ordering re-sentencing because court incorrectly assumed that defendant's guilty plea encompassed the quantity allegation in the indictment, when in fact quantity was disputed). "Because the district court did not specifically acknowledge the existence of the dispute over" whether Pineda-Doval acted with malice aforethought or recklessness, we are "left to guess whether the court was even aware of such a dispute." *Houston*, 217 F.3d at 1207. The court "demonstrated no recognition" that second-degree murder required a finding of extreme recklessness evincing disregard for human life, not simple recklessness. *Herrera-Rojas*, 243 F.3d at 1143. Perhaps the district court mistakenly believed that malice aforethought and recklessness are one and the same. We have interpreted Rule 32 strictly in order to avoid just this sort of uncertainty on appeal. The district court did not find "malice aforethought," as required by Rule 32.

---

[14]After the district court had decided that the cross-reference applied and calculated the Guidelines sentence, defense counsel made a couple of statements that suggested that he believed that the district court had specifically found that Pineda-Doval acted with malice aforethought. This mistake, while unfortunate, was not enough to waive the defendant's clear written objection to the PSR's conclusion that Pineda-Doval acted with malice aforethought. *See United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc) (defining waiver as "intentional relinquishment or abandonment of a known right" (internal quotation marks omitted)).

*c.    Clear and Convincing Evidence Standard*

In addition to failing to address the question of malice aforethought, the district court applied the incorrect burden of proof when deciding whether Pineda-Doval acted with malice aforethought. Counsel did not ask the district court to apply a heightened standard of proof at sentencing; therefore, plain error analysis applies. *See United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001). We can order re-sentencing only if there is "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

The first requirement is met. The preponderance of evidence standard is generally the appropriate standard for factual findings used for sentencing. However, the Ninth Circuit requires "facts found in support of Guidelines enhancements that turn out to have a disproportionate impact on the ultimate sentence imposed to be established by clear and convincing evidence." *United States v. Staten*, 466 F.3d 708, 720 (9th Cir. 2006); *see also Restrepo*, 946 F.2d at 661. The defendant argues that "malice aforethought" is such a fact. Had Pineda-Doval been sentenced under § 2L1.1, the 2005 Sentencing Guidelines would have suggested a sentencing range of 168 to 210 months.[15] Instead, the district court calculated a recom-

---

[15]The base offense level for transportation of illegal aliens is 12. U.S.S.G. § 2L1.1(a)(2). After making adjustments for the number of aliens transported, § 2L1.1(b)(2)(A), recklessly creating a substantial risk of death, § 2L1.1(b)(5), causing the death of any person, § 2L1.1(b)(6)(4), creating a substantial risk of death or bodily injury in the course of fleeing from law enforcement, § 3C1.2, and multiple counts, § 3D1.4, the total offense level would have been 33. Combined with the defendant's Criminal History Level III, the recommended Guidelines sentence was 168 to 210 months.

mended Guidelines sentence of life imprisonment.[16] In *United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000), *vacated on other grounds*, 532 U.S. 901 (2001), this court outlined six factors to consider when deciding whether a sentencing enhancement had an "extremely disproportionate" effect, three of which apply here: the finding of malice aforethought more than doubled Pineda-Doval's sentence (from 168-210 months to life imprisonment), increased his total offense level by more than four (from 33 to 45), and provided the basis for charging him with an entirely separate offense (second-degree murder). The clear and convincing standard of proof should have applied. *See Jordan*, 256 F.3d at 929 (requiring the clear and convincing standard where the nine-level enhancement increased the defendant's sentencing range from 70-87 months to 151-188 months); *United States v. Mezas de Jesus*, 217 F.3d 638, 643 (9th Cir. 2000) (nine-level enhancement on the basis of an uncharged kidnaping increased the defendant's sentencing range from 21-27 months to 57-71 months); *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999) (seven-level adjustment increased the defendant's sentencing range from 24-30 months to 63-78 months).

[20] We need not reach the remaining components of the plain error analysis. We hold that the district court erred by failing to apply the proper standard of proof. Because the Rule 32 error requires us to remand for resentencing in any event, a determination that the district court's error was plain —or that it was not—will have no effect in this case. Accordingly, we decline to make that determination.

---

[16]The base offense level for second degree murder is 38. U.S.S.G. § 2A1.2. After making adjustments for creating a substantial risk of death or bodily injury in the course of fleeing from law enforcement, § 3C1.2, and multiple counts, § 3D1.4, the district court arrived at a total offense level of 45. Combined with the defendant's Criminal History Level III, the recommended Guidelines sentence was life imprisonment.

**[21]** In sum, the district court did not specifically find that Pineda-Doval acted with malice aforethought, as required by Federal Rule of Criminal Procedure 32, and did not apply the correct standard of proof at sentencing. We vacate Pineda-Doval's sentence and remand for re-sentencing. *See Jordan*, 256 F.3d at 934; *United States v. Fernandez-Angulo*, 897 F.2d 1514, 1517 (9th Cir. 1990) (en banc).

## IX.

Pineda-Doval's conviction is **AFFIRMED**, his sentence is **VACATED**, and this case is **REMANDED** for the district court to expressly find whether there is clear and convincing evidence that Pineda-Doval acted with malice aforethought when he undertook the charged conduct and to resentence the Defendant in light of its finding.