**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alvaro PLANCARTE–ALVAREZ,**
**Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellant,**

v.

**Alvaro Plancarte–Alvarez,**
**Defendant–Appellee.**

**Nos. 03–50062, 03–50121.**

United States Court of Appeals,
Ninth Circuit.

Argued Feb. 6, 2004.

Submitted May 11, 2004.

Filed May 11, 2004.

Benjamin L. Coleman and Gerald Singleton, San Diego, CA, for the defendant-appellant/cross-appellee.

Carol C. Lam, United States Attorney, David P. Curnow, U.S. Attorney (on the brief), Stephen R. Cook, Assistant U.S. Attorney (at oral argument), U.S. Attorney's Office, Criminal Division, San Diego, CA, for the plaintiff-appellee/cross-appellant.

Before: BROWNING, THOMPSON, and WARDLAW, Circuit Judges.

DAVID R. THOMPSON, Senior Circuit Judge:

A jury convicted Alvaro Plancarte–Alvarez of importing marijuana in violation of 21 U.S.C. §§ 952 and 960, and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The convictions were grounded in events that occurred on May 28, 2002. Plancarte–Alvarez challenges the convictions, contending that the district court erroneously admitted evidence regarding a prior marijuana smuggling incident in violation of Federal Rules of Evidence 404(b) and 403. On cross-appeal, the government challenges Plancarte–Alvarez's sentence, arguing that the district court should have included the weight of the marijuana involved in the prior incident in determining the base offense level for the offenses of conviction. Plancarte–Alvarez moves to dismiss the cross-appeal, contending it is moot because he has been deported and is unavailable for resentencing. See Fed.R.Crim.P. 43(a).

We affirm Plancarte–Alvarez's convictions. We deny his motion to dismiss the government's cross-appeal, and we affirm his sentence but do so without prejudice to the government, so that it may move to vacate the sentence and have Plancarte–Alvarez resentenced in the event that he should return to this country.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Two Smuggling Incidents

On July 31, 2002, a federal grand jury returned a four-count indictment which charged Plancarte–Alvarez with two separate incidents of importing marijuana in violation of 21 U.S.C. §§ 952 and 960, and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Counts One and Two alleged that on March 19, 2002, Plancarte–Alvarez imported and possessed with intent to distribute approximately 34.95 kilograms of marijuana (the "March 19 incident"). Counts Three and Four alleged that on May 28, 2002, Plancarte–Alvarez imported and possessed with intent to distribute approximately 36.92 kilograms of marijuana (the "May 28 incident").

Plancarte–Alvarez moved to sever Counts One and Two from Counts Three

and Four. He argued that the March 19 incident and May 28 incident were dissimilar and that trying the charges together would not promote judicial economy but, rather, would confuse the jury and result in unfair prejudice. He contended that the March 19 incident was the result of duress. He claimed that on that date he drove the drugs to the border because certain individuals, whom he had met while working as a DEA informant, threatened him with physical harm if he refused to do so. As for the May 28 incident, he claimed he had recently purchased the vehicle he drove to the border and was unaware that it contained drugs.

In addition to seeking a severance, Plancarte–Alvarez moved under Federal Rule of Evidence 404(b) to exclude any evidence pertaining to the March 19 incident from a trial for the May 28 incident. The district court granted the motion for severance but denied the motion to exclude evidence.

Trial proceeded on Counts Three and Four (the May 28 incident). During the trial, Plancarte–Alvarez testified that he had not known the drugs were hidden in his car on May 28. In response to the government's evidence regarding the March 19 incident, Plancarte–Alvarez testified that on that date he drove the drugs to the border under threat of death. Prior to closing argument, as well as during the government's presentation of evidence regarding the March 19 incident, the court informed the jury that they could consider such evidence only as it related to Plancarte–Alvarez's knowledge or absence of mistake or accident in connection with the May 28 incident.

The jury found Plancarte–Alvarez guilty on both Counts Three and Four. Counts One and Two were later dismissed on motion of the government.

### B. *Sentencing*

Based on the weight of the drugs involved in the May 28 incident, the Presentence Report ("PSR") stated that the statutory maximum term of imprisonment as to each of the two counts of conviction was five years under 21 U.S.C. §§ 841(b)(1)(D) and 960(b)(4). In calculating Plancarte–Alvarez's base offense level under the United States Sentencing Guidelines, the PSR added the weight of the marijuana involved in the March 19 incident (34.95 kilograms) to the weight of the marijuana involved in the May 28 incident (36.92 kilograms) pursuant to U.S.S.G. § 1B1.3 (Relevant Conduct). The resulting base offense level was 22. The PSR recommended a two-level downward adjustment for minor role. With a total offense level of 20 and a Criminal History Category of I, Plancarte–Alvarez's Guideline range was 33 to 41 months for each of the May 28 offenses of conviction.

At the sentencing hearing, defense counsel objected to the PSR's calculation of Plancarte–Alvarez's base offense level, arguing that the court could not include the weight of the first load of marijuana without violating *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Defense counsel reasoned that if the weight of the first load of marijuana were included, the total drug quantity would exceed 50 kilograms of marijuana, causing the maximum statutory sentence for each offense to increase from five years under 21 U.S.C. §§ 841(b)(1)(D) and 960(b)(4), to 20 years under 21 U.S.C. §§ 841(b)(1)(C) and 960(b)(3).

After hearing argument on the *Apprendi* issue, the court ruled in favor of Plancarte–Alvarez. Based on the weight of the drugs involved in the May 28 incident only, the base offense level was determined to be 18. The court allowed a two-level downward adjustment for minor role and a one-level downward adjustment for vulner-

ability, resulting in a total offense level of 15 and a Guideline range of 18 to 24 months. The court sentenced Plancarte–Alvarez to concurrent terms of 21 months in custody and three years of supervised release on the two offenses of conviction.

### C. *Motion to Dismiss Cross–Appeal*

While this appeal was pending, Plancarte–Alvarez served his custodial sentence and was deported. After oral argument, the parties filed briefs on the question whether, in view of Plancarte–Alvarez's deportation, the government's cross-appeal of his sentence should be dismissed.

## DISCUSSION

### A. *Rule 404(b) Evidence*

Plancarte–Alvarez contends that the district court erred in admitting evidence regarding the March 19 incident. We disagree.

██ We review for abuse of discretion the district court's decision under Federal Rule of Evidence 404(b) to admit the disputed evidence. *United States v. Johnson,* 132 F.3d 1279, 1282 (9th Cir.1997). We also review for abuse of discretion the district court's determination under Federal Rule of Evidence 403 that the prejudicial effect of the evidence did not substantially outweigh its probative value. *United States v. Gonzalez–Torres,* 309 F.3d 594, 601 (9th Cir.2001).

██ Evidence of prior bad acts is admissible under Federal Rule of Evidence 404(b) if (1) the evidence tends to prove a material element of the offense charged, (2) the prior act is not too remote in time, (3) the evidence is sufficient to support a finding that the defendant committed the other act, and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged. *United States v. Mayans,* 17 F.3d 1174, 1181 (9th Cir.1994). The disputed evidence of the

March 19 incident satisfies all four of these requirements.

██ The March 19 incident and May 28 incident were close in time and remarkably similar. These circumstances support the government's position that Plancarte–Alvarez was engaged in purposeful and repetitive criminal behavior and was not, as Plancarte–Alvarez claims, an innocent victim who was forced to smuggle drugs the first time and tricked into smuggling drugs the second time. *See* 2 Wigmore, Evidence § 302 (rev.vol.1979) (explaining that the repetition of similar acts within a short time period decreases the likelihood that the acts were the result of an abnormal occurrence, such as mistake or inadvertence). The evidence regarding the March 19 incident was relevant to the issues of knowledge and the absence of accident or mistake in connection with the later May 28 incident, and tended to prove intent, a material element of the charged offenses.

██ Plancarte–Alvarez argues that there was insufficient evidence that he smuggled marijuana on March 19. He also contends the court should have made factual findings before admitting the disputed evidence. We disagree. In *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court rejected the notion that a district court is required to make a preliminary finding that the government has proved "other act" evidence by a preponderance of evidence before submitting such evidence to the jury. The Court concluded that 404(b) evidence should be admitted if "there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Id.* at 685, 108 S.Ct. 1496. In determining whether there is "sufficient evidence," the trial court should "consider all evidence presented to the jury." *Id.* at 690–91, 108 S.Ct. 1496.

Here, there was sufficient evidence that Plancarte–Alvarez smuggled marijuana on

March 19. Given the evidence regarding that incident, and considering the evidence pertaining to the May 28 incident, the jury could reasonably have concluded that Plancarte–Alvarez did not fall prey twice to the criminal plots of others, but, rather, knowingly and intentionally smuggled marijuana on both occasions.

■ Nor did the district court err in its application of Rule 403. The disputed evidence had significant probative value while the danger of unfair prejudice was minimized by the court's limiting instruction. *See United States v. Basinger*, 60 F.3d 1400, 1408 (9th Cir.1995). The court did not abuse its discretion in admitting the evidence.

### B. *Sentencing*

#### 1. *Motion to dismiss cross-appeal*

■ Plancarte–Alvarez contends the cross-appeal should be dismissed because (1) his deportation precludes his resentencing and thus renders the government's cross-appeal moot, and (2) equitable considerations grounded in the fugitive disentitlement doctrine support dismissal. Neither of these contentions has merit.

In *United States v. Valdez–Gonzalez*, 957 F.2d 643(9th Cir.1992), *abrogated on other grounds by* U.S.S.G. Amendment 345, we held that the defendants' deportation upon completion of their terms of imprisonment did not render the government's appeal of their sentences moot. Relying on *United States v. Villamonte–Marquez*, 462 U.S. 579, 581, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), we reasoned that the government could seek extradition of the defendants or the defendants might voluntarily reenter the country and, therefore, the sentencing issues were not moot.

Plancarte–Alvarez argues that *Valdez–Gonzalez* is no longer good law as a result of the Supreme Court's decision in *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). He contends that *Spencer* precludes any speculation that he might return voluntarily to the United States because he has been convicted of an aggravated felony and cannot reenter the country without violating the law. We are not persuaded. *Spencer* is distinguishable.

In *Spencer*, the issue before the Court was whether a habeas petitioner's challenge to the revocation of his parole had become moot once he completed serving the term of his sentence. *Id.* at 7, 118 S.Ct. 978. Although he could not be returned to confinement, the petitioner argued that his habeas petition was not moot because, among other things, revocation of his parole could be used to increase his sentence should he be convicted of another crime. *Id.* at 15, 118 S.Ct. 978. The Court rejected this argument, explaining that it was predicated upon the assumption that the petitioner would again violate the law, get caught, and be convicted. *Id.* The Court explained that the petitioner had the ability to prevent the triggering event of this trilogy of assumptions, and refused to speculate that the petitioner would again break the law. *Id.*

Here, in contrast, the government is not seeking to benefit from future criminal behavior it can prevent. The government has no control over whether Plancarte–Alvarez will choose to violate the laws of this country by reentry. Indeed in *United States v. Suleiman*, 208 F.3d 32 (2d Cir. 2000), a post-*Spencer* case similar to *Valdez–Gonzalez*, the Second Circuit held that the government's appeal of the defendant's sentence was not mooted by the fact that the defendant had completed his sentence and been deported, because it was possible that the defendant would voluntarily return to the United States. *Id.* at 38. It was also possible the government would extradite him. *Id.*

Because Plancarte–Alvarez might return to this country, whether voluntarily or oth-

erwise, we cannot say that his deportation "makes it impossible for the court to grant any effectual relief whatever to the [g]overnment." *Suleiman*, 208 F.3d at 38 (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) and *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)) (internal quotation marks omitted). The government's cross-appeal is not moot. *See also United States v. Rivas–Gonzalez*, 365 F.3d 806, 2004 WL 859315, at *2 (9th Cir. Apr.22, 2004) (sentencing issue not mooted by defendant's deportation after serving custodial portion of sentence because if he were "to reenter the United States, he would be required to comply with the conditions of his yet unserved two-year term of supervised release.").

 Plancarte–Alvarez also invokes the fugitive disentitlement doctrine, *see Parretti v. United States*, 143 F.3d 508, 510–11 (9th Cir.1998), arguing that equitable considerations support dismissal of the government's cross-appeal. We reject this argument. The fugitive disentitlement doctrine, which gives courts discretion to dismiss appeals by criminal defendants who are fugitives from justice, is patently inapposite.

Plancarte–Alvarez's motion to dismiss the cross-appeal is denied.

### 2. *Merits of the Cross–Appeal*

 The issue raised by the government's cross-appeal is whether *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), barred the district court from including the weight of the marijuana involved in the March 19 smuggling incident in determining Plancarte–Alvarez's base offense level for the May 28 incident. The answer is no.

The presentence report recommended that the weight of the March 19 load of marijuana be considered as relevant conduct for purposes of determining the base offense level for the May 28 offenses of conviction, and that the court impose a sentence within the statutory maximum for the amount of drugs involved only in the May 28 incident. The statutory maximum authorized by the jury's verdict for the amount of drugs involved in the May 28 incident is five years for each offense. 21 U.S.C. §§ 841(b)(1)(D) and 960(b)(4).

The district court believed that if it included the first load of marijuana in determining the base offense level for the May 28 offenses of conviction, it would have to apply the statutory maximum corresponding to the aggregate quantity of drugs involved in both incidents, resulting in a maximum term of 20 years imprisonment under 21 U.S.C. §§ 841(b)(1)(C) and 960(b)(3). However, recent decisions by this court are to the contrary. *See United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002) (en banc); *United States v. Toliver*, 351 F.3d 423 (9th Cir.2003). Under the Sentencing Guidelines, assuming relevant conduct (an issue we do not decide in this appeal), the district court could have added the weight of the first load of marijuana to the weight of the second load for purposes of determining the base offense level for the offenses of conviction, while still applying the statutory sentencing range prescribed by the jury's verdict.

In *Buckland*, we explained that two separate findings of drug quantity must be made in calculating sentences in drug cases—one under the relevant statute, and the other under the Sentencing Guidelines. "*Apprendi* dictates that drug quantity under the *statute* must be found by the jury (in a jury case), but *Apprendi* does not alter the authority of the judge to sentence *within* the statutory range provided by Congress." *Buckland*, 289 F.3d at 570 (emphasis in original).

In *Toliver*, which was decided after the district court sentenced Plancarte–Alvarez, the defendants argued that the district court erred in calculating their sentences based on 5 kilograms of cocaine because the jury did not reach a verdict on the quantity of cocaine. In rejecting this argument, we explained that the defendants erroneously conflated the requirements for establishing the *statutory* maximum sentence with the requirements for determining sentences under the Sentencing Guidelines. *Toliver*, 351 F.3d at 432. We explained that "the district court's quantity determination only violated *Apprendi* if it exposed the defendants to a sentence beyond the statutory range authorized by the jury's verdict." *Id.* at 433. Because the defendants were not exposed to a sentence that exceeded the 20 year maximum sentence authorized by the jury's conviction for a violation of 21 U.S.C. § 841(b)(1)(C) (undetermined amount of cocaine), there was no *Apprendi* violation. *Id.*

Here, as in *Toliver*, the district court would not have violated *Apprendi* by using the weight of both loads of marijuana to calculate the base offense level for the offenses of conviction, because Plancarte–Alvarez would not have been exposed to a sentence in excess of the five-year maximum for each offense of conviction under 21 U.S.C. §§ 841(b)(1)(D) and 960(b)(4). By adding the weight of the first load of marijuana to the weight of the second to determine Plancarte–Alvarez's base offense level, the base offense level would have been 22. The sentencing range corresponding to a base offense level of 22 with Plancarte–Alvarez's Criminal History Category of I is 41–51 months and is within the five-year statutory maximum for each of his offenses of conviction as found by the jury. With a two-level downward adjustment for minor role and a one-level downward adjustment for vulnerability, the total offense level would have been 19, resulting in a sentencing range of 30–37 months for each offense.

If the March 19 incident qualifies as relevant conduct under the Guidelines, a question yet to be determined by the district court, the weight of that load of marijuana should be included in determining the base offense level for Plancarte–Alvarez's jury convictions for the May 28 acts of importing marijuana in violation of 21 U.S.C. §§ 952 and 960, and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

### 3. *Remedy*

■ Ordinarily, we would vacate the sentence imposed by the district court and remand for resentencing. However, the district court cannot resentence Plancarte–Alvarez at this time because the government has deported him and, unless he returns to the United States, he will not be present for sentencing as required by Rule 43(a) of the Federal Rules of Criminal Procedure. In view of this circumstance, we conclude that the more prudent course of action is that taken by the Second Circuit in *Suleiman*, 208 F.3d at 41. Consistent with that approach, we affirm the sentence imposed by the district court, but do so without prejudice to an application by the government to the district court to vacate Plancarte–Alvarez's sentence and resentence him in accordance with this opinion. The government must make such an application "within 90 days after such time, if ever, as the [g]overnment knows or reasonably should know that [Plancarte–Alvarez] is in this country and available for resentencing in accordance with Fed. R.Crim.P. 43." *Id.*

AFFIRMED.