**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael W. RYAN, Defendant–
Appellant.**

No. 07–30319.

United States Court of Appeals,
Ninth Circuit.

Submitted June 4, 2008.*

Filed June 19, 2008.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Leif M. Johnson, Esq., Eric B. Wolff, Esq., Office of the U.S. Attorney, Billings, MT, for Plaintiff–Appellee.

Mark D. Parker, Esq., Parker Heitz & Cosgrove, Billings, MT, James H. Goetz, Esq., Goetz, Gallik & Baldwin, P.C., Bozeman, MT, for Defendant–Appellant.

** The Honorable Otis D. Wright, II, United States District Judge for the Central District of California, sitting by designation.

Before: FERNANDEZ, CALLAHAN, Circuit Judges, and WRIGHT **, District Judge.

MEMORANDUM ***

Michael Ryan was charged in a 17–count indictment for his involvement in a scheme to defraud car renters and insurance companies by billing and overcharging customers of his Thrifty Car Rental agency for windshield replacements which in fact were never replaced. A jury convicted Ryan of one count of conspiracy to commit mail and wire fraud, fourteen counts of mail fraud and two counts of wire fraud. The district court sentenced him to 71 months imprisonment.

At trial, he sought to suppress government evidence derived from renting several vehicles to undercover FBI agents. He also sought to block the testimony of government witnesses on the grounds of the best evidence rule. There is also a claim that the district court erred in calculating the intended loss amount and number of victims for application of the guidelines. We affirm.

According to the evidence adduced at trial, Ryan and his employees would inform customers that Daimler Chrysler, from whom Thrifty National bought its cars, had a policy which did not permit even the slightest nick to a windshield and so Thrifty billed the customers an average of $1,294 for the cost of replacing the "allegedly" damaged windshield. Some windshields were merely repaired and oth-

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3. May 20, 2008.

ers were replaced for as little as $220 to $350.

When renters contacted Thrifty to inquire about the charges, they were told that Chrysler had a "zero tolerance policy" and according to that policy, if there was any damage to the windshield, no matter how slight, the windshield had to be replaced.

Prior to trial, Ryan moved to suppress the evidence obtained by undercover FBI agents. Those agents posed as customers and rented eight cars from Thrifty and created small chips in the windshields. In seven of the eight cases, insurance companies insuring the FBI agents forwarded checks ranging from $700 to $1700 to Ryan's co-conspirators for windshield replacement. Only one of the eight windshields was actually replaced. Ryan contended that the small chips taken from the windshields constituted a seizure of his property without a warrant. The district court denied the motion to suppress finding no meaningful interference with Ryan's possessory interest. We review the district court's denial on the motion to suppress de novo and its factual findings underlying its ruling for clear error. *United States v. Miranda–Guerena,* 445 F.3d 1233, 1236 (9th Cir.2006).

■ Ryan held no expectation of privacy in those vehicles. Indeed, he held them out to the general public for rental. That is precisely how the government assumed possession and control of the vehicles—including the windshields. The rentals contemplated normal wear and tear, which included damage to the windshields. It is not clear—and we need not decide—whether intentionally nicking the windshield deprived defendant of something that he had not agreed to, particularly since any loss was charged to and paid by the renters' insurers. In any event, we find that even if chipping of the windshields constituted a seizure, it was a *de minimus* one, as in *United States v. Jacobsen,* 466 U.S. 109, 125, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The law enforcement interests justifying the procedure were substantial and the interference, considering that the damage was paid for many times over, was minimal.

Ryan also challenges his sentence. Using the 2002 edition of the Federal Sentencing Guidelines Handbook, the U.S. Probation Office's presentence report ("PSR") calculated a base offense level of 6 under § 2B1.1(a); added 12 levels based on an intended loss amount of $399,096 under § 2B1.1(b)(1)(G); added 4 levels because the offense involved more than 50 victims under § 2B1.1(b)(2)(B); and added 2 levels based on Ryan's role in the offense under § 3B1.1(2). The PSR attributed 3 criminal history points based on Ryan's prior drug convictions. Based on a total adjusted offense level of 24 and a criminal history category of II, Ryan's sentencing range was projected to be 55 to 71 months of imprisonment. The district court's interpretations of the federal sentencing guidelines are reviewed de novo, its factual determinations are reviewed for clear error, and its application of the guidelines to the facts are reviewed for abuse of discretion. *United States v. Rising Sun,* 522 F.3d 989, 993 (9th Cir.2008).

The intended loss was calculated as follows:

a total of 414 invoices were involved in the scheme (which accounts for 39 invoices that were billed on multiple occasions), and each invoice claimed a minimal replacement value of $330. Also, the average amount of the invoices was $1,294. Therefore, $1,294 minus $330 is $964, which would be the average profit per invoice. Finally, $964 multiplied by 414 is $399,096.

Ryan contends on appeal that the calculation should have been based on 41 victims. We note, however, that Ryan failed to raise this argument to the district court during the sentencing hearing. Even considering his arguments, they lack merit. There were 414 invoices involved in the scheme. The government argued for the inclusion of more. 487 invoices were introduced at trial. In any event, the methodology employed was sound. *See United States v. Scrivener,* 189 F.3d 944, 949–950 (9th Cir.1999).

■ Ryan contends that the trial court erred in permitting two government witnesses to testify in violation of the best evidence rule. (Fed.R.Evid.1002.) Specifically, two witnesses testified about Chrysler's return policy. We review the district court's evidentiary ruling for abuse of discretion. *See United States v. Plancarte–Alvarez,* 366 F.3d 1058, 1062 (9th Cir. 2004). We find no abuse of discretion. The court permitted the witnesses to testify from their personal knowledge regarding whether, during the periods alleged in the indictment, Chrysler had a policy that the windshields had to be replaced immediately when they were returned chipped or cracked. Here, the witnesses were not testifying about the contents of a policy manual, but from the standpoint of employees, as to what Chrysler's policy was in practice. Therefore, the best evidence rule was not implicated.

■ Next, Ryan contends there was a constructive amendment to the indictment or fatal variance caused by a divergence between the conduct proved at trial and that alleged in the indictment. Specifically, Ryan claims that while the indictment asserted that Chrysler's policy required windshield replacement no matter how small the damage, at trial the government introduced evidence of a different alleged misrepresentation, that Chrysler required immediate replacement of windshields. We review de novo a defendant's contention that the district court constructively amended the indictment. *United States v. Adamson,* 291 F.3d 606, 612 (9th Cir.2002).

Constructive amendment of an indictment occurs when "(1) 'there is a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument,' or (2) 'the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved.'" *Adamson,* 291 F.3d at 615 (quoting *United States v. Von Stoll,* 726 F.2d 584, 586 (9th Cir.1984)).

Here, the government stated in its trial brief that it would present testimony that Thrifty employees received incentives to report damage and complete paperwork and "furthered the conspiracy by reciting false representations about the policy against chip repairs and the need for an immediate replacement of the windshield." We find that the government's emphasis on immediate replacement during trial is not distinctly different from the allegations set forth in the indictment. In short, unlike in *Adamson,* there is no indication that the prosecutor or the court induced Ryan to prepare a defense that would be insufficient to ward off the government's proof at trial.

Lastly, Ryan contends here, as he did in the district court, that he is entitled to acquittal because the government failed to establish that he participated in an illegal conspiracy. We reject this contention as there is ample evidence in the record to support Ryan's conviction. The district court's order is replete with citations to the trial record demonstrating that Loney's testimony alone was sufficient to prove that Ryan agreed to participate in a scheme to charge customers inflated prices

to repair a windshield. Thus, there is sufficient evidence in the record to support Ryan's conviction. The conviction is therefore **AFFIRMED**.

---

\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

\*\* The Honorable Otis D. Wright II, United States District Judge for the Central District of California, sitting by designation.

\*\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.