
DA 13-0385

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 273

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JASON DEAN FRANKS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 11-169 (C)
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Robin A. Meguire, Meguirelaw.com, Great Falls, Montana

      For Appellee:

        Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

        Ed Corrigan, Flathead County Attorney, Travis Ahner, Deputy County
Attorney, Kalispell, Montana

                        Submitted on Briefs:  June 11, 2014
                                    Decided:  October 8, 2014

Filed:

_____
                         Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Jason Dean Franks appeals from his conviction of felony sexual intercourse without consent in the Eleventh Judicial District Court, Flathead County. We reverse and remand for a new trial.

¶2     On appeal, we address whether the District Court abused its discretion when it denied Franks's motion for a new trial.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     On December 28, 2010, fifteen-year-old C.L. told her father that his former roommate, Jason Franks, had raped her when she was eleven years old. The next day, C.L. and her father went to the Kalispell Police Department to report the allegation. During a forensic interview on January 11, 2011, C.L. told Detective Michelle O'Neil that she decided to come forward after four years because of a newspaper article reporting Franks had been accused of molesting a five-year-old boy. The article, published December 3, 2010, was accompanied by a photograph of Franks, which C.L. recognized. C.L. told Detective O'Neil she wanted to help in that case if she could.

¶4     On May 16, 2011, Franks was charged with sexual intercourse without consent and sexual assault. Before trial, Franks moved to exclude any mention of the charges in Cause No. DC-10-444(B), the case reported in the newspaper, as more prejudicial than probative under M. R. Evid. 403 and improper character evidence under M. R. Evid. 404(b). Franks pointed out he was acquitted of those charges. The State responded it intended to offer testimony explaining that C.L.'s delayed disclosure was prompted by the newspaper article. The State explained it also intended to offer expert testimony

about disclosure patterns in child sexual abuse cases, and this expert testimony, combined with testimony about the newspaper article, would help the jury understand why C.L. disclosed when she did. The District Court held a hearing on the motion and concluded the testimony was not offered as evidence of Franks's character, but rather to explain C.L.'s disclosure, and therefore was admissible. The District Court said Franks could offer evidence he was acquitted of the charges in order to counteract any unfair prejudice.

¶5 After multiple continuances, trial began November 5, 2012. The prosecutor made the following reference to the newspaper article during his opening statement:

> You'll hear from [C.L.], who will state that the reason that she disclosed, finally and fully came forth, was because Jason Franks was in the newspaper. There was an article, and he was accused of raping a little boy, age four or five. And [C.L.] saw the newspaper article, which had a picture of Jason Franks, and it brought everything back home. She recognized him, down to the scar on his face, and suddenly she thought, "I've got to come forward to see if I can have an impact in that case."

¶6 C.L. testified that before seeing the newspaper article, she had disclosed the incident to her best friend, D.B.; another close friend, A.A.; her boyfriend, R.A.; and D.B.'s father. She testified that after a discussion with D.B.'s father, she started to think about telling her own father. C.L. was asked whether a newspaper article also helped her come forward. She responded, "I wouldn't say it helped me come forward. It gave me a bigger visual of everything, that I wasn't the only one." C.L. testified she could not remember whether she saw the newspaper article before talking to her dad, but "it was close in the time frame." She later testified she told Detective O'Neil that after seeing the newspaper article, "I knew that there was . . . another person that had had the same thing done to them that was done to me . . . ." She testified she told Detective O'Neil she

wanted to help in that case. Detective O'Neil also testified that C.L. brought up the newspaper article during the forensic interview, and said her reason for coming forward at that time was to help in that case.

¶7 Franks then testified in his defense and denied the allegations. He testified that his picture had been in the newspaper because he had been charged with sexually assaulting his girlfriend's son. He testified that he had been tried and found not guilty of those charges by a jury. On cross-examination, the prosecutor asked Franks whether he heard his attorney state, during jury selection, "that not guilty doesn't mean innocent."

¶8 Prior to closing argument, the jury was instructed that evidence about the newspaper article was admitted only to show why C.L. decided to disclose the incident, and could not be used for any other purpose. During closing argument, the prosecutor stated:

> Boy, is [C.L.] lucky that a guy named Jason Franks, who happened to be her dad's roommate, is in the paper, accused of molesting a little boy. What are the odds?
>
> What are the odds that the fall guy that she just happened to list, named Jason, my dad's roommate, shows up in the paper? Is he an easy target because of the paper, or is he the target because he did this?

¶9 Franks was convicted of both sexual intercourse without consent and sexual assault. He moved for a new trial and acquittal. He claimed the testimony at trial failed to bear out the prosecution's theory that the newspaper article had prompted C.L.'s disclosure, because her testimony revealed she had already told friends about the incident before seeing the newspaper article. He claimed the unfair prejudice caused by testimony about the newspaper article far outweighed its probative value. He also argued that the

4

conviction was not supported by sufficient evidence, and that his conviction of both sexual intercourse without consent and sexual assault violated due process and subjected him to double jeopardy.

¶10 By stipulation, the District Court vacated the sexual assault conviction. The District Court denied the motion with respect to the remaining issues. The District Court reasoned that despite some conflicts in the testimony, there was evidence showing the newspaper article motivated C.L's disclosure. The District Court also said the jury instruction and evidence of Franks's acquittal on the prior charges served to counteract any possible prejudice. The District Court stated that testimony about the newspaper article did not deny Franks a fair and impartial trial. The District Court also concluded there was sufficient evidence supporting the conviction. Franks was sentenced to fifty years in the Montana State Prison, with ten years suspended.

**STANDARD OF REVIEW**

¶11 A district court's denial of a motion for a new trial is reviewed for abuse of discretion. *State v. Brummer*, 1998 MT 11, ¶ 49, 287 Mont. 168, 953 P.2d 250. A district court abuses its discretion when it acts arbitrarily, without conscientious judgment, or exceeds the bounds of reason. *State v. Hernandez*, 2009 MT 341, ¶ 7, 353 Mont. 111, 220 P.3d 25.

5

**DISCUSSION**

¶12 *Whether the District Court abused its discretion when it denied Franks's motion for a new trial.*

¶13 Following a verdict of guilty, a district court may order a new trial "if required in the interest of justice." Section 46-16-702, MCA. The court may order a new trial either on motion of the defendant or of its own accord, pursuant to its inherent powers. *Brummer*, ¶ 35. Franks moved for a new trial on the grounds that evidence of prior charges of child molestation should have been excluded under M. R. Evid. 404(b) and was more prejudicial than probative under M. R. Evid. 403. He claimed these errors denied him the right to a fair and impartial trial.

¶14 As a general rule, character evidence is not admissible to prove conduct. M. R. Evid. 404; *State v. Dist. Ct. of the Eighteenth Judicial Dist.*, 2010 MT 263, ¶ 47, 358 Mont. 325, 246 P.3d 415. Evidence of other crimes, wrongs, or acts may not be admitted to prove a person's character in order to show that he or she acted in conformity with that character on a particular occasion. M. R. Evid. 404(b); *State v. Stewart*, 2012 MT 317, ¶ 61, 367 Mont. 503, 291 P.3d 1187. The evidence may, however, be used for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b). Rather than prohibiting the admission of evidence, M. R. Evid. 404(b) prohibits a theory of admissibility. *Eighteenth Judicial Dist.*, ¶ 47. Evidence of prior bad acts is not admissible if it is offered for a purpose that requires "the inference from bad act to bad person to guilty person," *Eighteenth Judicial Dist.*,¶ 47, but may be admissible if it

6

"'proves a material issue without requiring any inference to the defendant's criminal disposition,'" *Stewart*, ¶ 61 (quoting 22A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5239, 260 (Supp. 2012)).

¶15   Even if evidence of other crimes, wrongs, or acts is offered for a valid non-propensity purpose, M. R. Evid. 404(b) may require its exclusion if "the nature of the evidence might tempt the jury to decide the case against the defendant on an improper propensity basis." *Stewart*, ¶ 62. Evidence of other crimes, wrongs, or acts may unduly prejudice the jury against the defendant, regardless of the purpose for which the evidence is nominally admitted. *See State v. Sage*, 2010 MT 156, ¶ 36, 357 Mont. 99, 235 P.3d 1284. In this way, M. R. Evid. 404(b) must be viewed in concert with M. R. Evid. 403, which allows the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Evidence that is offered for a valid purpose under M. R. Evid. 404(b) is still subject to the balancing test prescribed by M. R. Evid. 403. *Stewart*, ¶ 67.

¶16   Unfair prejudice may arise from evidence that arouses the jury's hostility or sympathy for one side, confuses or misleads the trier of fact, or unduly distracts the jury from the main issues. *State v. Bieber*, 2007 MT 262, ¶ 59, 339 Mont. 309, 170 P.3d 444. Where the probative value of evidence is substantially outweighed by its unfair prejudice, admission of the evidence may be reversible error. *State v. Pendergrass*, 179 Mont. 106, 112-13, 586 P.2d 691, 694-95 (1978). In certain circumstances, the nature of the prejudicial material introduced may so severely undermine the fairness of the trial that a new trial is the only remedy. *Havens v. State*, 285 Mont. 195, 200-01, 945 P.2d 941, 944

7

(1997) (ordering new trial in civil case pursuant to § 25-11-102, MCA, and M. R. Civ. P. 59(a)).

¶17 In its ruling on Franks's motion in limine, the District Court found testimony about the newspaper article relevant because it explained C.L.'s reason for disclosing the incident after four years. The evidence would be offered for a purpose other than to show Franks's character, and thus M. R. Evid. 404(b) did not require its exclusion. The "highly inflammatory" nature of child molestation evidence, however, required the District Court and the State to tread with caution. *State v. Van Kirk*, 2001 MT 184, ¶ 46, 306 Mont. 215, 32 P.3d 735; *see also United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) ("Indeed, no evidence could be more inflammatory or more prejudicial than allegations of child molestation.").

¶18 As the District Court noted in its ruling on Franks's motion for a new trial, the testimony regarding the timing of and reasons for C.L.'s disclosure was, in some respects, contradictory. Nevertheless, there was testimony supporting the State's theory of admissibility. C.L. testified that she told Detective O'Neil she wanted to help in the prosecution of the case reported in the newspaper. Detective O'Neil testified that C.L. said, during the forensic interview, that the other case was her reason for coming forward. Testimony also established that C.L. disclosed the incident to her father on December 28, more than three weeks after the article was published on December 3. The testimony presented at trial did in fact help to explain why C.L. disclosed the abuse to her father and to police in December 2010.

¶19   It is apparent, however, that the State did not limit its use of the testimony to explaining the timing of C.L.'s disclosure.  In his opening statement, the prosecutor stated Franks was "accused of raping a little boy."  After Franks testified he had been acquitted of those charges, the prosecutor asked if he heard his attorney state "that not guilty doesn't mean innocent."  This question implied to the jury that, rather than being innocent until proven guilty, Franks was a serial child molester who had simply gotten away with it.  The prosecutor later commented on "the odds" of Franks showing up in the newspaper, "accused of molesting a little boy."  This comment strengthened the implication that Franks was a child molester and therefore more likely to have assaulted C.L.

¶20   The State's use of the evidence aroused the jury's hostility toward Franks, resulting in unfair prejudice.  *See Bieber*, ¶ 59.  The District Court's instruction to the jury that they were not to consider testimony about the newspaper article for any purpose other than to explain C.L.'s disclosure was not sufficient to protect the defendant from undue prejudice in the face of the State's repeated insinuations.  *See Sage*, ¶ 42.  Similarly, the value of allowing Franks to testify that he was acquitted of the prior charges was negated by the State's cross-examination, which showed frank disregard for the right of a criminal defendant to be presumed innocent until proven guilty.  Section 46-16-204, MCA.

¶21   Based on the information and arguments presented to the District Court at the motion in limine stage, and given the overwhelmingly prejudicial nature of child molestation evidence, the wiser course would have been to withhold ruling on its

admissibility. The issue could have been revisited in the event that the delayed disclosure became an issue for C.L.'s credibility.

¶22 When ruling on Franks's motion for a new trial, however, the District Court had the full benefit of hindsight, and knew exactly the manner in which the State had manipulated the District Court's attempted safeguards and used the evidence to create the impression that Franks was a habitual abuser of children. Clearly, the probative value of this evidence was outweighed by the danger of unfair prejudice and should have been excluded under M. R. Evid. 403. *See Pendergrass*, 179 Mont. at 112-13, 586 P.2d at 694-95. To hold that introduction of the evidence did not deny Franks a fair and impartial trial was an abuse of discretion. *See Havens*, 285 Mont. at 200-01, 945 P.2d at 944 ("[I]n the context of a motion for a new trial, the court should have reconsidered its prior ruling . . . ."). Therefore, we reverse and remand for a new trial.

¶23 Because we have already determined Franks's conviction must be reversed, we need not address the remaining issues raised in his appeal.

¶24 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ MIKE McGRATH

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

10

Justice Laurie McKinnon, specially concurring.

¶25 Although I concur in the Court's decision, I do not agree with all that is said in our Opinion. The Court decides this case, and reverses Franks's conviction, based on the District Court's *post-trial* ruling denying Franks's motion for a new trial. In so doing, however, the Court offers several statements relating to the District Court's *pre-trial* rulings on Franks's motions in limine. I believe these statements are inconsistent with the Court's ultimate disposition of the case and that they consequently undermine the Court's analysis. I am thus compelled to note my disagreement with them.

¶26 First, the Court opines that "the wiser course" would have been for the District Court "to withhold ruling" on the admissibility of the newspaper article. Opinion, ¶ 21. I disagree. "A motion in limine is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Hunt v. K-Mart Corp.*, 1999 MT 125, ¶ 11, 294 Mont. 444, 981 P.2d 275. For example, in *State v. Crider*, 2014 MT 139, 375 Mont. 187, 328 P.3d 612, we observed that Crider had sought through a motion in limine to exclude evidence of his prior bad acts. When his motion was unsuccessful, he adjusted his trial strategy accordingly and instead challenged the State's use of that evidence. *Crider*, ¶ 40.

¶27 A similar process unfolded in the present case. Franks sought through a motion in limine to prohibit the State from introducing evidence of the 2010 newspaper article reporting that he had been charged with molesting a five-year-old boy in DC 10-444(B). When that motion was unsuccessful, Franks made the tactical choice to confront the evidence directly. Franks and the prosecution were entitled to a ruling on his motion in

11

limine so that they could formulate their respective trial strategies. Indeed, both Franks and the prosecution addressed the newspaper article in their respective opening statements, offering differing views of what the article would ultimately show regarding C.L.'s disclosure. I do not subscribe to the Court's view that the District Court should have left the parties hanging, thereby engendering uncertainty and potential confusion as to how the case should proceed.

¶28 We have repeatedly approved, and even encouraged, the use of motions in limine, recognizing that such motions serve "valid and useful" purposes and even have "special advantages" in the trial process. *State v. Ingraham*, 1998 MT 156, ¶ 36, 290 Mont. 18, 966 P.2d 103; *Crider*, ¶ 19; *State v. Ankeny*, 2010 MT 224, ¶ 36, 358 Mont. 32, 243 P.3d 391; *see also* 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5037.10, 760-64 (2d ed. 2005) (listing some of the advantages of a motion in limine). Certainly, there may be situations where the relevance and admissibility of evidence will depend on developments at trial, in which case it will be necessary to delay ruling on the motion in limine or to revisit a prior ruling. Here, however, the prosecution intended to present the jury with a story that included testimony about the newspaper article in order to explain the timing of and reasons for C.L.'s disclosure. Franks and the prosecutors needed to know at the outset whether the District Court would allow this story to be told, so that they could adjust their trial strategies accordingly. I cannot agree that withholding a ruling would have been "the wiser course."

¶29 Second, the Court states that the issue of allowing testimony about the article "could have been revisited in the event that the delayed disclosure became an issue for

12

C.L.'s credibility." Opinion, ¶ 21. The implications of this statement are that the delayed disclosure was not *already* an issue for C.L.'s credibility and that the defense first had to challenge C.L.'s credibility based on the timing of her disclosure before the prosecution could present any testimony about the article. I disagree on both counts.

¶30   "Relevant evidence" is defined in M. R. Evid. 401 and includes "evidence bearing upon the credibility of a witness." Thus, since evidence of the delayed disclosure bore upon C.L.'s credibility, the evidence was relevant from the outset and its admission was not dependent on an impeachment theory of admissibility as the Court suggests. This was a "he said/she said" case. Franks had denied C.L.'s accusations, and the State's proof hinged largely on whether the jury believed C.L. C.L., however, had waited four years to report Franks's alleged sexual misconduct. In evaluating C.L.'s testimony, the jurors naturally would wonder why she had delayed so long in disclosing the incident. Consequently, the delay in her disclosure was necessarily at issue. In this regard, C.L. had brought up the newspaper article in her interview with Kalispell Police Detective Michelle O'Neil and stated that it was part of the impetus behind her disclosure. Upon seeing the article, she realized she was not the only victim, and she indicated to O'Neil that she wanted to help with the other victim's case. Before trial, the State gave notice that it intended to call Dr. Wendy Dutton, an expert in child sexual assault cases, to assist the jury in understanding the dynamics of child sexual abuse. Dr. Dutton would testify that there are many reasons why children disclose sexual abuse, and one of the reasons is to help or protect others. Omitting this portion of C.L.'s story would have impeded the jurors' evaluation of her credibility and the truthfulness of her disclosure. *Cf. United*

13

*States v. Green*, 617 F.3d 233, 250 (3d Cir. 2010) (evidence of the defendant's prior bad acts could be introduced to establish the government informant's reason for cooperating with the FBI, and thereby "improve her credibility with the jury"). Accordingly, the delayed disclosure was relevant from the outset. M. R. Evid. 401.

¶31 Additionally, the prosecution's need for narrative integrity is a second reason why testimony about the article was potentially admissible at the outset. The circumstances surrounding C.L.'s disclosure—including the article—were an integral part of the story the prosecution sought to present to the jury. Indeed, as noted, jurors naturally would wonder about the four-year delay between the alleged offense and C.L.'s disclosure of it. Franks was not entitled to tie the prosecution's hands and force the prosecution to omit significant pieces of C.L.'s story simply by deciding in advance not to make an issue of the delayed disclosure at trial. "[A] criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief v. United States*, 519 U.S. 172, 186-87, 117 S. Ct. 644, 653 (1997). The "need for evidentiary richness and narrative integrity in presenting a case" may increase the probative value of uncharged misconduct evidence and support its admissibility. *Old Chief*, 519 U.S. at 183, 117 S. Ct. at 651. Narrative integrity "is often essential to the capacity of jurors to satisfy the obligations that the law places on them." *Old Chief*, 519 U.S. at 187, 117 S. Ct. at 653. "People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard." *Old Chief*, 519 U.S. at 189, 117

14

S. Ct. at 654. Also, if jurors' expectations are not satisfied, they "'may penalize the party who disappoints them by drawing a negative inference against that party.'" *Old Chief*, 519 U.S. at 188, 117 S. Ct. at 654 (quoting Stephen A. Saltzburg, *A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence*, 66 Cal. L. Rev. 1011, 1019 (1978)). Of course, "[n]ot every story needs lurid embellishment," and courts must be careful not to "stretch the 'complete-the-story' logic too far." 1 Kenneth S. Broun et al., *McCormick on Evidence* § 190, 1053 (7th ed. 2013). But if "the incomplete story that the defendant would prefer leaves a gap that would frustrate 'the jurors' expectations about what proper proof should be,'" *McCormick on Evidence*, *supra*, at 1054 (quoting *Old Chief*, 519 U.S. at 188, 117 S. Ct. at 654), then there is a valid basis for admitting the evidence—subject to balancing of unfair prejudice against probative value under Rule 403.

¶32 Here, failing to explain the delay in C.L.'s disclosure—even if the defense had not yet made an issue of it—would have left a conspicuous hole in C.L.'s story and the prosecution's evidence, thus frustrating "the jurors' expectations about what proper proof should be." *Old Chief*, 519 U.S. at 188, 117 S. Ct. at 654. This is particularly apparent given Dr. Dutton's testimony that one reason children disclose sexual abuse is because they learn that another victim has come forward. The significance of this testimony would have been lost on the jury without C.L.'s testimony about the article. The article and Dr. Dutton's testimony were designed to help the jury understand the prosecution's case and evaluate C.L.'s credibility. Contrary to the Court's statement, Opinion, ¶ 21, it was not a necessary prerequisite that the defense first make the delayed disclosure an

15

issue for C.L.'s credibility. The need for narrative integrity was a valid, independent basis for admitting testimony about the article—subject, as noted, to Rule 403 balancing.

¶33 This leads to my final point. In discussing the District Court's ruling on Franks's motion for a new trial, the Court observes that "the District Court had the full benefit of hindsight, and knew exactly the manner in which the State had manipulated the District Court's attempted safeguards and used the [article] to create the impression that Franks was a habitual abuser of children." Opinion, ¶ 22. The Court then opines that "the probative value of this evidence was outweighed by the danger of unfair prejudice and should have been excluded under M. R. Evid. 403." Opinion, ¶ 22. The Court cites *Havens v. State*, 285 Mont. 195, 200-01, 945 P.2d 941, 944 (1997), for the proposition that, in the context of a motion for a new trial, a district court may need to reconsider an earlier evidentiary ruling. Opinion, ¶ 22. Although I do not dispute this principle, I believe it is necessary to be clear that the circumstance necessitating a retrial in this case arose not from an error in the District Court's initial rulings on Franks's motions in limine but, rather, from the prosecution's ultimate *misuse* of the newspaper article during trial for purposes that the District Court had expressly forbidden.

¶34 *Havens* illustrates this point. The case involved a lawsuit against the State for failing to install a stoplight at a busy intersection where Havens was injured. Havens filed a motion in limine to exclude evidence of his alcohol consumption on the date of the accident, arguing that this evidence was irrelevant. The State responded that it would produce testimony linking Havens's alcohol consumption as a contributory factor in the accident. On this basis, the district court denied Havens's motion. Despite the State's

16

assurance, however, no evidence was produced at trial establishing a connection between Havens's alcohol consumption and the cause of the accident. Thus, Havens moved for a new trial, which was denied. *Havens*, 285 Mont. at 197-98, 945 P.2d at 942-43.

¶35 On appeal, we reversed and remanded for a new trial. We held that the district court "did not err when it initially denied Havens' motion in limine based upon the State's assurance that the testimony to be presented at trial would link Havens' alcohol consumption to the question of causation." *Havens*, 285 Mont. at 201, 945 P.2d at 944. We held that the district court erred, rather, after trial when it failed to attribute proper significance to the fact that the State had not presented such testimony. We explained:

> [A]fter the verdict, when Havens renewed his contention in the context of a motion for a new trial, the court should have reconsidered its prior ruling in light of the State's failure to fulfill its promise to elicit testimony establishing Havens' alcohol consumption as a factor in causing the collision. Havens persistently contended before, during and after the trial that the evidence was not relevant and that it would and did cause prejudice materially affecting his right to a fair trial.

*Havens*, 285 Mont. at 201, 945 P.2d at 944. We held that, under these circumstances, the district court abused its discretion in denying the motion for a new trial.

¶36 The same principle applies here. In advance of trial, the prosecution gave notice that it intended to introduce evidence of four prior bad acts by Franks: testimony about a 1989 sexual offense involving a 17-year-old girl; testimony about a 1992 sexual offense involving a 12-year-old girl; testimony about a newspaper article reporting on a 2010 charge of sexual misconduct involving a 5-year-old boy (of which Franks was ultimately acquitted); and a recent report by a female alleging that Franks had sexual intercourse with her sometime in 1992, when she was 13 or 14 years old. Franks filed two motions

17

in limine seeking to exclude this evidence on the ground that it is "propensity character evidence" and not relevant to the charges involving C.L.

¶37 The District Court agreed with Franks as to the 1989 and 1992 incidents, concluding that the State had "failed to identify a theory of logical relevance which would permit admission of the evidence." The court observed that the State essentially was "seeking to prove that Defendant has the character for being sexually interested in young girls and that he acted in conformity with that character regarding C.L.," which "is the sort of impermissible propensity inference not allowed pursuant to Rule 404(b)." With respect to the 2010 article, however, the District Court concluded that the State's theory was valid and that any prejudice to Franks could be mitigated:

> The evidence regarding the 2010 newspaper article is not offered to prove that Franks has the character to engage in sexual assault and for the jury to infer that he acted in conformance with that character by assaulting C.L. Why and when C.L. disclosed are issues in this case and the evidence is probative of C.L.'s motive in disclosing and should be admitted. As for any unfair prejudicial effect, Defendant can offer into evidence the fact that he was acquitted of the charges.

¶38 A trial court has broad discretion in determining the relevance and admissibility of evidence. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811; *State v. Oatman*, 275 Mont. 139, 143-44, 911 P.2d 213, 216 (1996). I do not believe the District Court abused its discretion in excluding evidence of the 1989 and 1992 incidents, while allowing testimony about the 2010 article for the limited purpose of explaining the timing of and reasons for C.L.'s disclosure. Rather, similar to *Havens*, 285 Mont. at 201, 945 P.2d at 944, the problem developed at trial when one of the prosecutors made improper remarks that violated the letter and spirit of the District Court's rulings.

18

¶39 In his opening statement, the prosecutor told the jury: "You'll hear from [C.L.], who will state that the reason that she disclosed, finally and fully came forth, was because Jason Franks was in the newspaper." The prosecutor then indicated that "[Franks] was accused of raping a little boy, age four or five." As the State concedes on appeal, this was not an accurate statement, as the article did not report that Franks had been accused of "rape." Furthermore, stating that Franks had been accused of "raping a little boy" was an inflammatory accusation, *State v. Rogers*, 2013 MT 221, ¶ 44, 371 Mont. 239, 306 P.3d 348; *State v. Van Kirk*, 2001 MT 184, ¶ 46, 306 Mont. 215, 32 P.3d 735, which is particularly apparent in light of the voir dire proceedings. Substantial time was spent ascertaining whether the prospective jurors could fairly and impartially decide a case of alleged sexual offenses against an 11-year-old girl. Six members of the venire admitted they could not be impartial and thus were excused by the District Court for cause, while others raised concerns but opined that they could remain impartial nonetheless. Given the nature of the charges and the concerns raised in voir dire, portraying Franks as a serial "rapist" risked provoking feelings of indignation and revulsion in the jurors.

¶40 During trial, Franks took the stand and denied C.L.'s allegations of misconduct. On cross-examination, the prosecutor referenced Franks's picture in the newspaper and inquired whether his appearance in the December 2010 picture was the same as how he looked in late 2006 and early 2007 (the period of the alleged offenses against C.L.). As a result, on redirect examination, Franks explained that his picture had been in the paper because he had been charged with a sexual offense involving his girlfriend's son. He testified that he was tried for that offense and the jury had found him not guilty. On

19

recross-examination, the prosecutor attempted to impeach this testimony by pointing out to Franks that "not guilty doesn't mean innocent"—the obvious innuendo being that Franks sexually assaulted his girlfriend's five-year-old son and got away with it. This insinuation was improper on several grounds.

¶41 First, in weighing probative value against the danger of unfair prejudice, the District Court reasoned that Franks could introduce the fact of his acquittal to mitigate any prejudice resulting from testimony about the article. This was integral to the District Court's Rule 403 balancing. In conveying to the jury that Franks's acquittal "doesn't mean [he's] innocent," the prosecutor undercut the very safeguard that the District Court had put in place when it ruled that the State could present testimony about the article.

¶42 Second, whether Franks actually committed the sexual offense referenced in the article was not something the jury needed to decide, or even consider. In other cases, where the jury is being asked to infer a person's knowledge, motive, intent, etc. based on the person's commission of a prior bad act, it is necessary for the proponent to present sufficient evidence upon which the jury can find that the prior act in fact occurred. *See Huddleston v. United States*, 485 U.S. 681, 690, 108 S. Ct. 1496, 1501-02 (1988); *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1062-63 (9th Cir. 2004); *United States v. Bailey*, 696 F.3d 794, 799-800 (9th Cir. 2012). But here, the District Court did not admit testimony about the article so that the jury could (1) find that Franks sexually molested a five-year-old boy and then (2) draw inferences based on Franks's commission of that offense. The court admitted the testimony solely to explain the timing of and reasons for C.L.'s disclosure. The truth of the allegations reported in the article was not at issue.

¶43 Third, and perhaps most importantly, the prosecutor's remark invited the jury to hold Franks accountable for an offense of which he had already been tried and acquitted. One of the protections guaranteed by the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution is the protection against a separate prosecution for the same offense after acquittal. *Ashe v. Swenson*, 397 U.S. 436, 445-46, 90 S. Ct. 1189, 1195 (1970); *State v. Barron*, 2008 MT 69, ¶ 14, 342 Mont. 100, 179 P.3d 519. One of the dangers in admitting evidence of a defendant's prior misconduct is that the jury will convict him not for the offense charged, but for his past misdeeds. *Old Chief*, 519 U.S. at 180-81, 117 S. Ct. at 650-51; *State v. Derbyshire*, 2009 MT 27, ¶ 51, 349 Mont. 114, 201 P.3d 811. This danger is aggravated when the prosecutor implies that the defendant was mistakenly acquitted of a prior offense—that he essentially "got away with it." There is a risk that the jury, even if it believes the defendant is not guilty of the present charge, will convict the defendant anyway in order to punish him for the prior acquitted charge. There is also a risk that the jury will convict because it believes, in spite of the acquittal, that the defendant committed the prior offense and thus is more likely to have committed the charged offense. "These dangers . . . strike at the heart of the protections embodied in the Double Jeopardy Clause." *State v. Mundon*, 292 P.3d 205, 222 (Haw. 2012).

¶44 Some courts have held that evidence of a prior offense is not admissible if the defendant has been acquitted of that offense. *See Mundon*, 292 P.3d at 221-23; *State v. Wakefield*, 278 N.W.2d 307, 308-09 (Minn. 1979); Christopher Bello, Annotation, *Admissibility of Evidence as to Other Offense as Affected by Defendant's Acquittal of that*

*Offense*, 25 A.L.R.4th 934, §§ 3-4 (1983 & Supp. 2014). While this Court has not, to my knowledge, adopted the same bright-line rule, we have held that an acquittal constitutes "a conclusive adjudication that defendant did not commit the [prior] offense" and that the State is estopped at the trial on the current offense from asserting facts that are contrary to the acquittal. *State v. Hopkins*, 68 Mont. 504, 517, 219 P. 1106, 1110 (1923).

¶45   Accordingly, for all of these reasons, the prosecutor's insinuation that Franks had in fact committed the 2010 offense, despite his acquittal of that charge, was improper.

¶46   Lastly, in closing argument, the prosecutor suggested that the jury should believe C.L. since she had implicated the same man who was accused of molesting another child:

> So what we have here is this young girl who, from the first time she discloses [to her friends], indicates "it was my father's roommate," and that continues. Then, before the newspaper article comes out, she tells her then-boyfriend it's a guy named Jason, that's all he knew. Then she continues, and finally the newspaper comes out and, man, is she lucky. Boy, is she lucky that a guy named Jason Franks, who happened to be her dad's roommate, is in the paper, accused of molesting a little boy. What are the odds?
> What are the odds that the fall guy that she just happened to list, named Jason, my dad's roommate, shows up in the paper? Is he an easy target because of the paper, or is he the target because he did this?

This argument invited the jury to infer that Franks is a sexual predator who preys on young children, that his acts of sexual aggression are dictated by his character, and that he acted in conformity with that character by sexually assaulting C.L. This is the very inference that Rule 404, our precedents, and the District Court's rulings all forbid.

¶47   In deciding whether "the interest of justice" required that Franks be granted a new trial, § 46-16-702(1), MCA, the District Court needed to consider the State's failure to comply with the court's rulings on Franks's motions in limine, *Havens*, 285 Mont. at 201,

22

945 P.2d at 944. The Court implicitly concludes, and I agree, that the District Court should have attributed greater significance to the prosecution's misuse of the newspaper article and manipulation of the District Court's attempted safeguard. Opinion, ¶ 22. Franks was on trial for two sexual offenses against C.L. The District Court allowed the State to present testimony that C.L. disclosed the misconduct after seeing an article which displayed Franks's picture and reported that he had been charged with sexual misconduct against a young boy. Evidence of prior child molestation is highly inflammatory and prejudicial—even more so where, as here, the defendant has been charged with doing the same thing to another child. Opinion, ¶ 17; *Van Kirk*, ¶ 46. However, rather than limit his questioning and arguments in accordance with the District Court's rulings, the prosecutor dwelled on and embellished the nature of the 2010 charge and went beyond explaining the timing of and reasons for C.L.'s disclosure. Collectively, the prosecutor's remarks implied to the jury that Franks was a serial child molester. The prosecutor invited the jury to infer that Franks committed the prior offense and thus committed the present offense, and also invited the jury to punish Franks for what the prosecutor implied was an erroneous acquittal of the 2010 charge. We cannot have confidence under these circumstances that Franks received a fair and impartial trial. In light of the prosecutor's actions, the District Court should have granted Franks's motion for a new trial. *Havens*, 285 Mont. at 201, 945 P.2d at 944.

¶48 In conclusion, except for my disagreement with the aforementioned statements at ¶¶ 21 and 22 of the Opinion, I otherwise join the Court's decision reversing and remanding for a new trial. The prosecutor's improper use of uncharged misconduct

23

evidence, beyond the use authorized by the District Court's rulings on Franks's motions in limine, denied Franks a fair and impartial trial. I specially concur.

/S/ LAURIE McKINNON

Justice Jim Rice joins the Special Concurrence of Justice Laurie McKinnon.

/S/ JIM RICE